Richard MILES, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-81-00233-CR.

Court of Appeals of Texas,
El Paso.

Aug. 4, 1982.

Rehearing Denied Nov. 10, 1982.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

OPINION

OSBORN, Justice.

Richard Miles and Donald Ray Dixon were tried together and both convicted of attempted murder, and their punishment was assessed at fifteen years and one day confinement. Richard Miles appeals solely on grounds that he was deprived of reasonably effective assistance of counsel. We direct the district court to conduct a hearing concerning the basic issues raised by the Appellant, and we delay our final determination of the appeal pending the receipt of the record of that hearing.

Although his court appointed counsel may have made some tactical errors, he did present Appellant's defense of alibi to the jury and the issue of failure to raise a viable defense, such as existed in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), does not exist in this case. Instead, the appeal revolves around tactical errors in the trial, presentment of the defense which was raised, and the punishment stage of the trial following the jury verdict of guilty.

■ The first point asserts error because Appellant's trial counsel did not ask the jury a single question on voir dire. The examination of the panel by the Assistant District Attorney consists of seventy-two pages in the record of this case. He gave the prospective jurors a general explanation of the trial, the charge being prosecuted, the burden of proof, the range of punishment, and inquired of the panel and of particular individuals about following the law and giving both the State and the defendants a fair trial. In several instances, the court gave some necessary explanation to members of the panel to whom particular questions were directed. Two jurors were excused because of bias. Counsel for Mr. Dixon and then counsel for Appellant made short statements to the jury. The jury was advised of the presumption of innocence, that the burden of proof was on the State, and that a verdict of not guilty should be returned. Certainly, counsel for Miles, who later in the trial qualified his client for probation, should have inquired of the prospective jurors concerning their ability to consider the full range of punishment, including probation, in an attempted murder case. *See: Henriksen v. State,* 500 S.W.2d 491 (Tex.Cr.App.1973).

■ Normally, you would expect counsel for the accused to determine if any prospective juror either knew or was related to the prosecutor or any of the State's witnesses. Also, counsel should inquire about the willingness of the jurors to apply the presumption of innocence and their willingness to require the State to meet its burden of proof. Merely telling the panel of these provisions of the law without inquiring about the panel giving them full effect does not normally meet expected standards of one who diligently represents his clients.

Can one who asks not a single question meet the standard of providing "reasonably effective assistance?" While it is possible that counsel who ask only the basic questions as noted above may provide a reasonably effective assistance at this beginning stage of the trial, one who asks no questions has really provided no assistance. Certainly, there are tactical issues involved in qualifying a jury panel, but we know of no tactical advantage to stand mute.[1] Neither can it be asserted that counsel for Mr. Miles was "riding on the coattails" of the counsel for the other defendant, because he did not ask any questions either.

The State relies upon the holding in *Jackson v. State,* 491 S.W.2d 155 (Tex.Cr.App. 1973), where the court in commenting upon a short "ten minute" examination of the jury panel concluded that the length of the examination could have been dictated by trial strategy. At times, a short examination may be a good strategy; it may even be very adequate. But, we know of no strategy which permits counsel to waive all questions to a jury panel. As between "trial strategy" and "ineffective assistance of counsel," we are inclined to conclude on the facts in this case that it was the latter.

The barest of research reflects that voir dire is an important and sometimes "critical stage" in the trial of a criminal case. *Eason v. State,* 563 S.W.2d 945 (Tex.Cr.App. 1978); *United States v. Dellinger,* 472 F.2d 340 at 366 (7th Cir., 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); Teague & Helft, 3 Texas Criminal Practice Guide, Chapter 72, (1980); Rothblatt, Successful Techniques for Criminal

---

1. Mr. Titus Edwards, who was assisted in the defense by his wife, Mary, made the following statement to the jury at the conclusion of the State's voir dire examination:

    May it please the Court, ladies and gentlemen, as Mr. Jenkins has pointed out, my name is Titus Edwards and I am being assisted by my wife, Attorney Mary Edwards.
    If I sound as though I have something in my mouth, I have a slight speech impediment because I am just up from major surgery recently. I don't have anything to say to you. I just want you to look at me here. I think Mr. Jenkins has thoroughly examined you and I don't think there's any need for me to add anything to what he has said.
    However, we do feel that those of you who will be selected, the twelve of you who will be selected, will listen to all the facts and render a true verdict. We are asking those who will be selected to bring us back a verdict of not guilty. That's all we have to say. Thank you very much.

Trials, Chapter 3, Section C (1971); Campbell, The Multiple Functions of the Criminal Defense Voir Dire in Texas, 1 American Journal of Criminal Law 255 (1972); and Teitelbaum, Voir Dire: Another View, 1 American Journal of Criminal Law 274 (1972).

Total lack of voir dire examination is not the only problem area in this case. While the defendant was testifying at the punishment stage and qualifying for probation, counsel asked him if he had ever been in any trouble before this particular time. He said he had not. On cross-examination, the State's attorney then asked him about his having been picked up in 1967 for felony theft, in 1968 for theft of an automobile, in 1968 for robbery by theft, and in 1978 for robbery by assault. He testified that he was never convicted on any of these charges, but by then the harm had been done. In *Ex parte Ewing,* 570 S.W.2d 941 (Tex.Cr.App.1978), the court in its opinion which was written more than a year before the case before us began, pointed out to these same attorneys the need to make an independent investigation of the facts surrounding the allegations against one's client and to determine the existence of a police record. There was a total failure to follow that warning in this case.

The next complaint is that counsel made no argument at the punishment stage of the trial. The waiver of such argument came after the defendant was badly "wounded" by the cross-examination as to his arrest record and when he needed some rehabilitation before the jury. The defendant's wife had testified that he was the sole support for her and three children, and the evidence reflected that he was eligible for probation. Certainly, there was an argument that could be made in his behalf. The advantage of waiving argument as opposed to making a plea for leniency for a family man with no prior convictions is difficult to recognize as a valid trial strategy. *See: Ransonette v. State,* 550 S.W.2d 36 (Tex.Cr. App.1976), which concluded that waiver of argument at the punishment stage of the trial was trial strategy. Also *see:* Clinton and Wice, Assistance of Counsel in Texas,

12 St. Marys L.J. 1 at 34 (1980). In this case, the State waived opening argument and if defense counsel could prevent a closing argument of the State's attorney by waiving argument for the defendant, then a valid strategy would be obvious, but since the State may waive its opening argument and still have an absolute right to close (a basically unfair privilege), no real strategy is involved by waiving what could be a legitimate argument for the defendant.

The last contention is that Appellant was denied effective assistance of counsel because of the failure to file a motion for severance. Since the other defendant had prior felony convictions, Mr. Miles had an absolute right to a severance. Article 36.09, Code Crim.Pro. Again, there could be trial strategy in trying someone with a clean record in a case with a person with prior convictions in hopes of receiving a lighter sentence. But, that strategy was lost when counsel opened the door to the prosecutor to prove the Appellant's arrest record. Also, if counsel did not take time to even learn that his own client had a record of several arrests, it is difficult to believe he ever inquired about the criminal record of the other defendant.

As we review the four basic complaints about (1) voir dire, (2) opening the door for the arrest record, (3) waiving argument at the punishment stage of the trial, and (4) failing to seek a severance, we do not have a record such as can be developed in a habeas corpus hearing in which testimony can be obtained as to particular trial strategies. But, applying the standards enunciated in *Ewing v. State,* 549 S.W.2d 392 (Tex. Cr.App.1977), and restated in *Ex parte Ewing,* 570 S.W.2d 941 (Tex.Cr.App.1978), we are inclined to conclude that the totality of the representation affirmatively demonstrates counsel's ineffectiveness. At the same time, we recognize the seriousness of determining that counsel failed to meet the minimum standards required to provide reasonably effective assistance to his client. Therefore, with the issues involved being clearly delineated, we direct the judge of the 180th District Court to hold a hearing

within forty-five days from the date of this opinion, and within thirty days thereafter deliver to the Clerk of our Court the evidence developed along with his findings and conclusions on the four areas involved in the Appellant's contentions as to ineffective assistance of counsel.

We direct that the record include, if available, the respective parties' jury cut list, the names of the jurors selected, and any jury information sheets used by counsel in selecting the jury in this case. If the jury information sheets are not available, we request that the record include a sample jury information sheet such as would have been furnished to the counsel in this case.

The appeal is abated pending the receipt of such additional record.

### OPINION

### AFTER REMAND

The trial court has entered an order in this case reciting that a factual development on the issues raised in our earlier opinion is impossible due to the death of Titus Edwards and the unavailability of Mary B. Edwards, who has been suspended from the practice of law for one year.

We do now have available a sample "juror information form" and the jury strike list used by counsel for the State and counsel for this defendant in the trial court. The "juror information form" provided basic information about a prospective juror's age, employment, family, religious preference and prior jury service. It would not help counsel in knowing how a prospective juror felt about applying the law to the facts of the case. The strike list reflects double cuts on two prospective jurors, but we do not find this to be necessarily significant.

For the reasons set forth in our original opinion, we conclude that the overall conduct of the defense reflects that the Appellant did not receive reasonably effective assistance of counsel in the trial of his case. We sustain the four points of error and remand the case for a new trial.

The judgment of the trial court is reversed, and the case is remanded for a new trial.