COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

MELVIN BLAYLOCK, )
 No. 08-01-00464-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 238th District Court

)


THE STATE OF TEXAS,
)
 of Midland County, Texas

)


 Appellee.
)
 (TC# CR26508)


O P I N I O N



 Melvin Blaylock appeals his conviction for aggravated sexual assault. A jury found him
guilty and the judge assessed punishment at life imprisonment to be served in the Institutional
Division of the Texas Department of Criminal Justice. On appeal, he asserts that his attorney
provided ineffective assistance of counsel during both the guilt/innocence and punishment phases
of trial. We affirm.

FACTUAL SUMMARY


 On the evening of October 25, 2000, between 6 and 9 p.m., Appellant visited the home where
Mary Jackson lived with Rodney and Van Menefield. Appellant was related to Jackson's ex-husband. Jackson had also been to Appellant's house on many prior occasions. Appellant was
drinking beer and smoking crack cocaine with the Menefields. Jackson was drinking as well. 
Appellant left the house around 10 or 11 p.m. Jackson left the house close to midnight and headed
toward her cousin's house nearby. En route, Jackson ran into Norman Young, who was an
acquaintance. 

 Jackson testified she was walking down the street with Young when they both heard yelling
from Appellant's house. As they approached, they saw Appellant yelling at someone who appeared
to be lying on the floor. When Appellant saw them standing in the yard, he darted towards them,
pushed Jackson down on the ground, and climbed on top of her. He then draggged Jackson into the
house and pulled her into the back room. Young followed them inside. Appellant pushed Jackson
up against the wall and began threatening her and hitting her in the head. At one point, Appellant
picked up a knife and threatened to kill her. Appellant removed Jackson's clothes, pulled down his
pants, and initiated sexual intercourse.

 Young was still in the room and told Appellant to leave Jackson alone. Appellant then
momentarily stopped and suggested that Young take a turn. Young proceeded to have sex with
Jackson for a few minutes and, after having second thoughts and being told by Jackson that she was
going to call the police, he suddenly stopped and again tried to make Appellant stop. When he was
unsuccessful, Young left the house. 

 Appellant threw Jackson down onto a mattress that he placed on the floor and began having
sex with her in various positions. Jackson begged him to stop. When Appellant was finished,
Jackson pulled on her clothes, left the house and began running and screaming. Appellant pursued
her down the alley, pushed her up against the fence, and hit her in the lip.

 Jackson's screams had alerted a few of the neighbors. Appellant fled once he realized that
people were watching. Jackson asked a neighbor to call the police because Appellant had raped her. 
When the police and ambulance arrived, Jackson was transported to the hospital. She had noticeable
scratches and scrapes on her arm and a swollen lip. The nurses found redness on her cervix and
lacerations on the walls of her vagina which were compatible with sexual assault.

 Appellant does not dispute that he had sexual relations with Jackson but he claims it was
consensual. He did not know how she received the bruises, the scrapes, and the swollen lip. Young,
who was a friend of Appellant, testified that Jackson was intoxicated when he met her on the street
and that she wanted him to go with her to Appellant's house. Young told her to go home because
he believed she was too drunk. He disputed Jackson's claims that Appellant dragged her into the
house. According to Young, Jackson voluntarily went inside Appellant's home. Young testified that
when he walked into the back room, Jackson and Appellant were both naked and having sex. 
Appellant slapped Jackson in the face, but Young never saw a weapon or any type of knife. Young
admitted engaging in intercourse with Jackson and claimed she had initially agreed but later changed
her mind.

INEFFECTIVE ASSISTANCE OF COUNSEL


 In two points of error, Appellant contends that he was denied effective assistance of counsel.
In Point of Error No. One, he complains that his attorney failed to ask any questions of the panel in
voir dire, that he failed to strike a particular veniremember, and that he failed to adequately explain
the punishment range for the aggravated sexual assault charge. In Point of Error No. Two, he claims
that during the punishment stage, counsel failed to offer any evidence and failed to make closing
argument.

Standard of Review


 The proper standard for determining claims of ineffective assistance is the two-step analysis
adopted by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984). Hernandez v. State, 988 S.W.2d 770, 771-72 (Tex.Crim.App. 1999). 
Under the first prong, the defendant must show that counsel's performance was deficient, to the
extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. Jackson
v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). The defendant must demonstrate that his
attorney's representation fell below an objective standard of reasonableness under prevailing
professional norms. Vasquez v. State, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Under the
second prong, the defendant must establish that counsel's deficient performance prejudiced the
defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d
at 771. Prejudice is established by a showing that there is a reasonable probability that but for
counsel's unprofessional errors, the result of the proceeding would have been different. Strickland,
466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771. A reasonable
probability is a probability sufficient to undermine confidence in the outcome. Id. 

 When we review a claim of ineffective assistance of trial counsel, we must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable, professional assistance
and an appellant must overcome the presumption that the challenged conduct can be considered
sound trial strategy. Jackson, 877 S.W.2d at 771; Calderon v. State, 950 S.W.2d 121, 126
(Tex.App.--El Paso 1997, no pet.). Appellant therefore faces a difficult burden and a substantial risk
of failure. See Thompson v. State, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Allegations of
ineffectiveness of counsel must be firmly founded in the record. Hawkins v. State, 660 S.W.2d 65,
75 (Tex.Crim.App. 1983); Calderon, 950 S.W.2d at 126. Under the Strickland test, an appellant
bears the burden of proving ineffective assistance by a preponderance of the evidence. Jackson, 877
S.W.2d at 771; Calderon, 950 S.W.2d at 126.

Guilt-Innocence


 In Point of Error No. One, Appellant suggests that his counsel's failure to ask the jury a
single question in voir dire demonstrates his overall ineffectiveness. To decide if a defendant has
been denied effective assistance of counsel, we look at the entire representation and the particular
circumstances of the case. Thompson, 9 S.W.3d at 813. Voir dire is an area where trial strategy is
most evident. Simms v. State, 848 S.W.2d 754, 757 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd). 
 We will review matters of trial strategy only if an attorney's actions are without any plausible basis. 
 Id.

 Here, the examination of the panel by the Assistant District Attorney comprises almost thirty- six pages in the record. She gave the veniremembers a general explanation of the trial, the charge
being prosecuted, the burden of proof, the range of punishment, and inquired of the panel in general
and of individual members in particular concerning their ability to follow the law and give both the
State and Appellant a fair trial. Appellant's attorney then made a short statement to the jury. He
advised them of the charge against Appellant, told them that the burden of proof must be satisfied
beyond a reasonable doubt, and explained that there is a presumption of innocence. He did not
question the veniremembers individually and concurred with every challenge made by the State's
attorney.

 Voir dire is an important and sometimes critical stage in the trial of a criminal case. United
States v. Dellinger, 472 F.2d 340, 366 (7th Cir., 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443,
35 L.Ed.2d 706 (1973); Eason v. State, 563 S.W.2d 945 (Tex.Crim.App. 1978); Miles v. State, 644
S.W.2d 23, 24 (Tex.App.--El Paso, 1982, no pet.). One would expect counsel for the accused to
determine if any prospective juror either knew or was related to the prosecutor or any of the State's
witnesses. Miles, 644 S.W.2d at 24. Also, counsel should inquire concerning the ability of the
panelists to consider the full range of punishment, their willingness to apply the presumption of
innocence, and their willingness to require the State to meet its burden of proof. Henriksen v. State,
500 S.W.2d 491, 493 (Tex.Crim.App. 1973); Miles, 644 S.W.2d at 24. However, we must examine
the representation as a whole and weigh other aspects of the trial in determining whether counsel's
representation was in fact ineffective. Applying the required Strickland analysis, we note that
nothing in the record establishes that counsel's voir dire was the product of an unreasoned or
unreasonable strategy, or that there was a fair probability that it led to either an unreliable guilty
verdict or unjust punishment. (1)

 Second, Appellant asserts that his attorney provided ineffective assistance by failing to strike
veniremember Linda Patterson. The State inquired as to whether Patterson would be able to be fair
and impartial since she had worked on numerous cases with both the prosecutor and Appellant's
counsel as a psychologist for the sex offender treatment program. Patterson replied that she would. 
Appellant contends that he and his lawyer had discussed whether Patterson should be stricken and
that he did not think that having her serve would be a good idea. Counsel testified to the contrary,
emphasizing that he and Appellant talked about Patterson, determined that she could be fair and
eventually agreed to leave her on the panel. He would have struck her if Appellant had so desired. 
He was certain that Appellant did not specifically tell him to strike her. Consequently, Appellant's
allegations are not firmly founded in the record.

 Finally, Appellant argues that counsel failed to advise him of the punishment range
applicable to an aggravated assault charge. Counsel testified that he explained the punishment range
to Appellant on numerous occasions, that he explained the bifurcated system, and that Appellant was
given the option to select whether he wanted the judge or the jury to assess punishment. Counsel
and Appellant agreed that the better option was to have the judge pronounce sentencing.

 It is the defendant's burden to prove ineffective assistance of counsel and we will not make
such a finding based on sheer speculation. Because Appellant's contentions are not firmly supported
by the record, we overrule Point of Error No. One.

Punishment


 In Point of Error No. Two, Appellant contends that he was denied effective assistance at the
punishment stage because counsel failed to offer any mitigating evidence and failed to make closing
argument. The failure to call witnesses is irrelevant absent a showing that such witnesses were
available and Appellant would benefit from their testimony. King v. State, 649 S.W.2d 42, 44
(Tex.Crim.App. 1983); Hunnicutt v. State, 531 S.W.2d 618, 625 (Tex.Crim.App. 1976). Appellant
claims that counsel failed to call a witness by the name of Dee Dee Menefield. Counsel testified that
he visited with the woman on the telephone several different times but that she had no relevant
information. Moreover, counsel indicated that the prosecutor revealed the witness's background
such that calling her would not have benefitted Appellant's case. As for closing argument, the
decision to make one and the content thereof are generally considered matters of trial strategy not
subject to hindsight or second-guessing on appeal. See Ransonette v. State, 550 S.W.2d 36, 41
(Tex.Crim.App. 1976).

 Appellant has not demonstrated that counsel's performance was deficient, that the
representation fell below an objective standard of reasonableness under the prevailing professional
norms, nor that counsel's performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct.
at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d at 771. We overrule Point of Error No. Two. 
Having overruled both points of error, we affirm the judgment of the trial court.



February 20, 2003 
 ANN CRAWFORD McCLURE, Justice


Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.


(Do Not Publish)
1. See, e.g., Jackson, 877 S.W.2d at 769-71, (defense counsel's failure to strike venireman who had been victim
of crime and who stated that he could not be fair did not establish ineffective assistance of counsel when record did not
reveal reasons for counsel's decision); Delrio v. State, 840 S.W.2d 443, 446-47 (Tex.Crim.App.1992)(defense counsel's
failure to strike venireman who was former narcotics officer and knew defendant "by virtue of that employment," did
not establish ineffective assistance of counsel when record was insufficient to overcome presumption of competence). 
Bone v. State, 77 S.W.3d 828, 834 (Tex.Crim.App. 2002).