

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00371-CR

_____

MARY ELIZABETH MOORE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the County Court
Archer County, Texas
Trial Court No. CR-2018-00008

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

A jury convicted Appellant Mary Elizabeth Moore of the offense of assault causing bodily injury. *See* Tex. Penal Code Ann. § 22.01(a), (b). The trial court sentenced Moore to 90 days' confinement, suspended the sentence, placed her on 18 months' community supervision, and assessed a $4,000 fine. Within a single point, Moore raises five arguments that she was denied effective assistance of counsel. Because the record does not support the arguments that Moore raises, we conclude that Moore has failed to establish that her trial counsel was deficient. Accordingly, we affirm.

### II. Background

#### A. Brief Overview

On September 9, 2017, Moore and her boyfriend, Steed Dennis, attended a gathering at a residence in Archer County, Texas. While there, Moore was involved in a physical altercation with the complainant after the complainant interacted with Dennis. During the altercation, Moore struck the complainant's face with her fist. Consequently, the complainant suffered multiple injuries and went to the hospital for treatment.

On September 11, 2017, Sergeant Kelly Perry, an officer with the Archer County Sheriff's Office, responded to a call regarding the altercation and met with the complainant at the hospital. Although the complainant provided Sergeant Perry with

Dennis's name, she did not identify the individual who had struck her. Sergeant Perry, however, was able to identify Moore as the individual who had struck the complainant by reviewing the emergency contacts listed on Dennis's driver's license and by interviewing eyewitnesses. As a result, Moore was charged with one count of assault causing bodily injury, and the case proceeded to trial.

## B.    Relevant Portions of the Record[1]

### 1.    Jury Selection

After the State conducted its voir dire, Moore's trial counsel introduced himself and emphasized the "precept of veracity, the truth" but elected not to question the venire members, stating that the prosecution had "asked most of the questions I think that need to be asked here." Shortly after, Moore's trial counsel used peremptory challenges on three of the jurors, including a former correctional officer who had been previously assaulted by an inmate.

### 2.    Testimony

Following opening statements, the State called Sergeant Perry as its first witness. Sergeant Perry described the conversations he had at the hospital with the complainant and other witnesses, as well as his familiarity with the individuals involved:

> Q. (By [PROSECUTOR]) . . . Sergeant Perry, . . . you mentioned earlier that [the complainant] was somewhat reluctant to give the name of the person who [had] struck her.

[1]Because Moore does not challenge the sufficiency of the evidence, we limit the remainder of the background section to a summary of the relevant portions of the record that relate to Moore's arguments on appeal.

3

A. Correct.

Q. Okay. You're familiar with the -- the names and criminal histories of the people who are involved in this particular trial today, aren't you?

A. For the most part, yes, sir.

Q. Okay. Would she have any reason based on information that you were aware of to be afraid of Mr. [Dennis]?

. . . .

A. . . . I would say [Mr. Dennis has a] pretty extensive criminal history. . . . I can't really say [that the complainant] seemed to me to be apprehensive about identifying Mr. Dennis.

[DEFENSE COUNSEL]: Your Honor, I'm going to object. . . . Mr. [] Dennis is his own witness.

[PROSECUTOR]: Your Honor, I'm not calling Mr. [Dennis]. He's a member of -- we have a reason to believe that he's --

THE COURT: I'm going to agree on the grounds of hearsay and it's speculation. So I'm going to ask the jury to disregard those last remarks. Maybe it can be asked in a different pattern.

Q. (By [PROSECUTOR]) Sergeant Perry, are you aware of whether or not Mr. [Dennis] is . . . allegedly a member of a gang?

A. I believe he is.

[DEFENSE COUNSEL]: I object, Your Honor. That has nothing to do with this case.

[PROSECUTOR]: Your Honor, if she's afraid --

THE COURT: Overruled.

[DEFENSE COUNSEL]: Thank you, Your Honor.

4

Q. (By [PROSECUTOR]) Would it be reasonable for someone to be afraid of giving testimony involving a gang member?

A. Yes, sir.

After objecting twice to no avail during the State's direct examination of Sergeant Perry, Moore's trial counsel asked Sergeant Perry during cross-examination about the complainant's reluctance to give the name of the person who had struck her:

Q. So I guess she didn't want to tell you her name I guess because you said he's a gang member and that kind of stuff, right?

A. Correct.

Q. Okay. All right. So if she really did know her name after five hours of partying with them that would be false information, wouldn't it, when she said she didn't know her name?

A. If she knew her name, it would be.

Thereafter, the State called the complainant to the stand. The complainant testified that Moore had hit her in the face, causing the complainant to have black eyes and a broken nose and to go to the hospital for a potential concussion. The complainant explained that Moore had become upset with her because "her boyfriend [Dennis had] said that [the complainant] was a stuck-up b[---]h in high school" and because the complainant had patted his shoulder and had told him that she was not. The complainant testified that she did not curse or spit at Moore. On cross-examination, Moore's trial counsel questioned the complainant about why she did not identify Moore as the individual who had struck her:

5

Q. . . . Whenever you were interviewed . . . by . . . Sergeant Perry, he -- initially he pointed out [that] it was difficult . . . to . . . get you to cooperate with him; is that correct?

A. I didn't want to press charges because I didn't want anyone coming after me.

Q. Somebody coming after you?

A. Yeah, because I heard --

Q. Do what?

A. I heard [Dennis] was in a gang.

. . . .

Q. (By [DEFENSE COUNSEL]) Okay. Let's see. Now, when you were at the hospital you told [Sergeant Perry] you didn't know her name, correct[?] . . .

A. Uh-huh.

Q. But you did know her name, right?

A. Yes.

Q. So you lied to the officer when you were being questioned, correct?

A. I don't think I --

Q. Well, you told him that you didn't know her name[,] and now you said you did know her name?

A. Uh-huh.

6

Later, the State called two eyewitnesses who both testified that they had observed Moore strike the complainant in the face with her fist. One witness also testified that she did not see any indication that Moore had acted in self-defense.

Next, Moore took the stand and testified that the complainant had spit on her. She also discussed her family life, her small children, her education, and her present employment. Moore admitted that she had hit the complainant in the face in reaction to being spit on by the complainant. Notably, Moore implied that the strike was involuntary; she did not admit that she had acted intentionally, knowingly, or recklessly—the necessary mental state required for the assault charge.

### 3.     Closing Arguments

In closing arguments, defense counsel argued that the complainant had been untruthful with law enforcement. In addition, defense counsel characterized Moore's punch as a reflexive response to the complainant's spitting in her face: "Where in the statutes does it say you can't have a refle[x]ive response? Nowhere. It's intentional, knowingly, recklessly. . . . Now, this is an issue here. Did she knowingly intend to do this, did she recklessly do this? She did it reflexively." Moore's trial counsel did not, however, seek a jury instruction on self-defense.

### 4.     Trial Outcome

After nine minutes of deliberating, the jury unanimously found Moore guilty of the charged offense. The trial court dismissed the jury, entered judgment on the jury's

verdict, sentenced Moore to 90 days' confinement, suspended the sentence, placed her on 18 months' community supervision, and assessed a $4,000 fine.

### 5. Postjudgment Proceedings

Moore's appellate counsel filed a motion for new trial but did not attach any supporting affidavits. The State filed a response. The trial court denied the motion for new trial by written order. This appeal followed.

## III. Moore Failed to Meet Her Burden to Demonstrate that Counsel was Deficient

In her sole point, Moore argues that she received ineffective assistance of counsel because her trial counsel (1) did not ask any questions during voir dire, (2) filed no pretrial motions or elections, (3) did not object to character evidence, (4) did not seek an instruction on self-defense, and (5) did not take various actions prior to and during the punishment phase. We will address each alleged act or omission separately.

### A. Standard of Review

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that her counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The record must

affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08. To defeat the presumption of reasonable professional assistance, an allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

9

Although an ineffective-assistance-of-counsel claim may be raised on direct appeal, "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The Texas Court of Criminal Appeals has affirmed that direct appeal is "usually an inadequate vehicle for raising such a claim" because the record is generally undeveloped, *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005), and because "trial counsel has not had an opportunity to respond to these areas of concern," *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14. Indeed, the record on appeal will generally "not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard" as "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell*, 68 S.W.3d at 642.

**B.   Analysis**

**1.   Voir Dire**

In her first argument, Moore contends that trial counsel's performance was deficient because he did not ask questions during voir dire. In particular, Moore points out that her trial counsel failed to question a potential juror who had been previously assaulted by an inmate.

Defense counsel's lack of questioning during voir dire cannot be held deficient without an opportunity for counsel to explain the reasons for his actions unless the challenged conduct was "so outrageous that no competent attorney would have

10

engaged in it." *See Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593). In this case, the record does not definitively reflect the reasons why trial counsel acted as he did. The record Moore has brought forward merely indicates only one possible reason her trial counsel declined to ask questions—that the State's questioning adequately addressed her counsel's concerns. Even if this were trial counsel's only reason for not asking questions of potential jurors, "[d]efense counsel's articulated reason for declining to ask questions—that the prosecution's questioning adequately covered the defense's concerns—could be a legitimate trial strategy under the appropriate circumstances." *See Goodspeed*, 187 S.W.3d at 392. Thus, "we cannot conclude that the failure to ask any questions in voir dire constitutes conduct so outrageous that no competent attorney would have engaged in it." *Id.*

As for the potential juror who had been previously assaulted, Moore's trial counsel used a peremptory challenge on the potential juror. Thus, Moore's trial counsel's failure, if any, to question the potential juror is inconsequential because the individual was not ultimately seated on the jury. *See Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994) (holding that trial counsel's actions regarding two venire members were not material to whether counsel was ineffective because those two venire members were not seated on the jury). Therefore, Moore has failed to meet her burden to show that her trial counsel was ineffective for not asking questions during voir dire.

11

## 2. Pretrial Motions or Elections

In her second argument, Moore contends in a single sentence that her trial counsel was ineffective because he "failed to file any pretrial motions or elections." However, Moore has failed to provide any argument or authority explaining why her trial counsel's failure to file pretrial motions or elections was either objectively unreasonable or prejudicial. Thus, without more, including citation to authority, we conclude that this argument is inadequately briefed. *See* Tex. R. App. P. 38.1(i); *Gonzalez v. State*, 616 S.W.3d 585, 587 (Tex. Crim. App. 2020); *Mosley v. State*, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh'g) (rejecting a contention as inadequately briefed because appellant failed to provide argument or authority to support his position).

## 3. Failure to Object to Improper Evidence

Moore contends in her third argument that her trial counsel was ineffective for failing to timely object to the State's questioning concerning Dennis's alleged gang involvement and by failing to continue to object. Moore also contends that the prejudicial effect of this improper evidence was compounded when her trial counsel mentioned the alleged gang involvement of Dennis during the cross-examination of Sergeant Perry.

A defense counsel's failure to object to certain improper evidence is not by itself an indication of ineffective assistance of counsel unless the record clearly confirms that no reasonable trial counsel could have made such a decision. *See Long v. State*, 502 S.W.2d 139, 141 (Tex. Crim. App. 1973) (op. on reh'g). "[I]f counsel's reasons for his

12

conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003) (quoting *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002)).

In this case, the record lacks trial counsel's explanation for not objecting to the State's questioning about Dennis's alleged gang involvement. Thus, based on the record before us, we cannot conclude that there could be no plausible reason for trial counsel not to object to this testimony. *See Blackwell v. State*, 193 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that absent direct evidence in the record to establish why counsel did not object to complained-of testimony, counsel's reasons for his actions are presumed plausible).

The record is also silent on why trial counsel referenced Dennis's alleged gang involvement during the cross-examination of Sergeant Perry. The State contends that "[t]he reference to the alleged gang status of a potential witness had a legitimate purpose—to explain the victim's state of mind." While that may be one possible reason for defense counsel's conduct, we may not speculate as to the reasons why trial counsel acted as he did and must presume counsel acted pursuant to reasonable trial strategy. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (stating that ineffective assistance of counsel claims are not built on retrospective speculation); *see also Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) (presuming that defense counsel

13

acted pursuant to reasonable trial strategy because court could only speculate as to why counsel acted or failed to act). Without more, we hold that Moore has not met her burden of showing by a preponderance of the evidence that her trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Therefore, we conclude that Moore has failed to show deficient performance on this ground.

4.      **Failure to Request a Jury Instruction on Self-Defense**

Moore contends in her fourth argument that her trial counsel was ineffective for failing to seek a self-defense instruction. To be entitled to a self-defense instruction, a defendant must first admit to all elements of a crime charged before claiming that the conduct was legally justified. *See Ex parte Nailor*, 149 S.W.3d 125, 132–34 (Tex. Crim. App. 2004). Counsel is not ineffective for failing to request an instruction to which the defendant is not entitled. *See id.* at 133–34. Here, Moore was not entitled to a self-defense instruction because she testified that her action of striking the complainant was involuntary; thus, her testimony negated that she had acted with the necessary mental state required for assault. Therefore, her trial counsel was not ineffective for failing to request a self-defense instruction to which she was not entitled. *See id.* at 134; *cf. Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that appellant was not entitled to a jury instruction on the defense of necessity when appellant "argued [that] he did not commit the offense because he did not have the requisite intent").

Still, even if Moore were entitled to an instruction on self-defense, failing to request an instruction on self-defense does not mean that her trial counsel was ineffective. Because defensive issues largely depend on trial strategy and tactics, a competent defense attorney may decide that it would be inappropriate or ineffective to pursue a particular defense in a given case. *See generally Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) ("[J]ust because a competent defense attorney recognizes that a particular defense might be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case."). When a defendant's testimony centers on a lack of intent, courts have held that trial counsel is not deficient for failing to request jury instructions on defenses, such as self-defense. *See Nailor*, 149 S.W.3d at 134, *Dannhaus v. State*, 928 S.W.2d 81, 85–87 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Accordingly, trial counsel was not ineffective for not requesting an instruction on self-defense.

### 5. Alleged Failures Prior to and During the Punishment Phase

In her fifth and final argument, Moore contends that her trial counsel was ineffective because he allegedly failed to take various actions prior to and during the punishment phase. Specifically, Moore contends that her trial counsel did not request a presentence investigation (PSI) report, waived a risk-and-needs assessment, did not make any argument before the trial court for punishment, and did not present any mitigating evidence "in regards to sentencing." We address each of these complaints in turn.

With regard to Moore's complaint that her trial counsel failed to request a PSI report, we note that under the governing statute, it is the trial court's duty to order a supervision officer to prepare a PSI report—not defense counsel's duty to request one—and that a trial court is not required to order the preparation of a PSI report in a misdemeanor case if certain requirements are met. *See* Tex. Code Crim. Proc. Ann. art. 42A.252(b). We need not determine if such requirements were met here because Moore did not raise an issue challenging the trial court's failure to order a PSI report.

Moore also complains that her trial counsel waived the preparation of a risk-and-needs assessment that the trial court could have used in determining the conditions of her community supervision. The record includes the waiver, and it reflects Moore's signature, not her trial counsel's.[2]

Moore further complains that her trial counsel did not make any argument and did not present any mitigating evidence during punishment, but she notes that "the trial judge dismissed the jury and immediately sentenced [her] without the benefit of the mitigating or persuasive efforts of her lawyer." Moore is correct that the trial court dismissed the jury and immediately sentenced her without allowing for the presentation of evidence or argument; yet she does not specifically complain on appeal that her trial counsel failed to object to the trial court's decision to proceed straight to sentencing. Moreover, the record reflects that Moore presented some mitigating evidence to the

---

[2]Moore does not claim on appeal that her signature was involuntary.

16

trial court during guilt-innocence;[3] as mentioned above, Moore took the stand and testified about her family life, her small children, her education, and her present employment. Accordingly, Moore has not met her burden of establishing that her trial counsel was ineffective for these alleged failures that occurred prior to and during the punishment phase.

## 6.    Disposition

Based on the record before us,[4] in light of the strong presumption of reasonable professional assistance by defense counsel, in the absence of any opportunity for trial counsel to explain his actions, and based on the totality of the representation, we cannot say that Moore has met her burden of showing by a preponderance of the evidence that her trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Because Moore has not satisfied the deficient-performance prong of *Strickland*, we overrule her sole point.

---

[3]Moore does not state in her brief what mitigating evidence she would have presented if given further opportunity before she was sentenced.

[4]Moore cites a 1982 case from the El Paso Court of Appeals to support her one-sentence argument that "[t]his [c]ourt has the ability to remand the case after briefing for the trial court to hear evidence on issues brought by Appellant in this matter." *See Miles v. State*, 644 S.W.2d 23, 25–26 (Tex. App.—El Paso 1982, no pet.) (abating for trial court to hold a hearing for evidence to be developed as to defense counsel's trial strategies as related to appellant's four basic complaints of ineffective assistance). We are not bound by our sister court's opinion. We continue to abide by the directive of the Texas Court of Criminal Appeals that "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell*, 68 S.W.3d at 642.

## IV.  Conclusion

Having overruled Moore's sole point, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 22, 2021