2022 IL App (1st) 200436

No. 1-20-0436

Opinion filed February 2, 2022

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 5063 |
| | ) | |
| STEPHEN SAPP, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Stephen Sapp, was found guilty of two counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful use of a weapon (UUW). He was sentenced to three concurrent sentences of 15 months' imprisonment and one year of mandatory supervised released (MSR). On appeal, defendant contends that (1) the trial court erred in effectively barring witness Jocelyn Mrozek's statement that she owned the firearm by "inducing" her to assert her fifth amendment privilege and excluding her statement as hearsay; (2) trial counsel rendered ineffective assistance by failing to question prospective jurors, failing to

object to the trial court "inducing" Mrozek to assert her fifth amendment privilege, and failing to call a witness to testify to Mrozek's statement that she owned the firearm; and (3) defendant's three convictions violate the one-act, one-crime rule of *People v. King*, 66 Ill. 2d 551 (1977). We affirm the jury's findings of guilt but reverse defendant's convictions for all three offenses and remand for the trial court to merge the three offenses into the most serious.

¶ 2                                     I. BACKGROUND

¶ 3      Defendant was charged with two counts of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (C) (West 2018)) and one count of UUW (*id.* § 24-1(a)(8)), which alleged that on March 17, 2019, he knowingly carried on his person an uncased, loaded, and immediately accessible firearm in a place licensed to sell intoxicating beverages when he had not been issued a valid Firearm Owner's Identification (FOID) card or a concealed carry license.

¶ 4                                 A. Pretrial and Jury Selection

¶ 5      Prior to jury selection, the State informed the court that Mrozek was present as a trial witness pursuant to subpoena. The court ordered Mrozek to return the following day.

¶ 6      The State conducted all questioning of prospective jurors, with occasional clarifying questions and explanations by the court. Defense counsel asked no questions of prospective jurors and stated that he "ha[d] no questions" when the State finished questioning them. Defendant exercised three peremptory challenges and joined the State in two challenges for cause.

¶ 7                                         B. Trial

¶ 8                                     1. State's Case

¶ 9      Sean Skilnik testified that he was the corporate supervisor of Moretti's Restaurant (Moretti's) on the 6700 block of North Olmstead Avenue in Chicago. Skilnik was working as a

manager between 12:30 a.m. and 1 a.m. on March 17, 2019, when there was a "scuffle" at the bar. Skilnik saw security guard Joe Anderson on the floor with defendant, whom Skilnik identified in court. Skilnik broke up the scuffle and picked defendant up with the assistance of Anderson and security guard Connor Santoria. As they walked defendant out through the front door, defendant said that he dropped something. Skilnik felt an object from defendant's body against his right leg, then felt an object hit the floor. He did not see anything fall to the floor.

¶ 10 Within two seconds, Skilnik turned around and saw restaurant manager Mitchell Acance recover a firearm from the floor; Acance said, "It's a gun." Security guards took defendant out through the front door, and Acance handed Skilnik the firearm, which Skilnik identified in court. Skilnik handed the firearm to security guard Chris Oglesby and asked him to take it to the office. Police arrived, and Skilnik led them downstairs and into the office. Police did not arrest defendant because he "ran away."

¶ 11 Skilnik viewed a photo array on March 22, 2019, and identified defendant. Skilnik identified the photo array in court, and the State moved it into evidence.

¶ 12 Skilnik also identified a DVD containing a surveillance video of the incident, which he provided to police. Skilnik confirmed the video accurately depicted the events of March 17, 2019, and the State moved it into evidence. The video depicts the interior of a bar, which Skilnik identified as Moretti's "front door entrance and the main bar right in front of it." Skilnik identified defendant and Anderson entering the bar from another room and "going down to the ground and into the foot of the bar" and himself going to assist Anderson. He also identified himself with a group of men taking defendant out through a door and Acance behind him. He identified Acance handing him the firearm and then calling police.

¶ 13    Acance testified that he was working as a manager at Moretti's on March 17, 2019. Between 12:30 a.m. and 1 a.m., there was an altercation between two customers in the bar. Acance saw defendant, whom he identified in court, being escorted out by security. Anderson had control of defendant's upper body, Santoria had control of his legs, and Skilnik was walking behind defendant. Acance went to Skilnik's right and saw a firearm fall from the right side of defendant's waistband to the floor. Acance heard defendant say, "I dropped something," or "[L]et me get my stuff." Acance said, "[I]t's a gun," picked the firearm up, and gave it to Skilnik. Acance identified the firearm in court.

¶ 14    Acance viewed a photo array on March 26, 2019, and identified defendant as "the person in possession of a firearm." Acance identified the photo array in court, and the State moved it into evidence.

¶ 15    The State also moved into evidence a certified business record from G.A.T. Guns, Inc (G.A.T. Guns). This document shows that Mrozek purchased a "Glock 36 Gen 3" with a certain serial number on March 7, 2019, in East Dundee, Illinois.

¶ 16    Santoria testified that he was working security at Moretti's on March 17, 2019. He saw defendant, whom he identified in court, involved in a scuffle and grabbed defendant's legs. Anderson grabbed defendant "from behind," and he and Santoria walked defendant out of the bar. Santoria heard a "loud click noise" on the floor to his left and felt "a percussion of, like, something falling heavy," but he did not see what made the noise. Defendant said, "I dropped something," and Santoria responded, "I'll get it for you in a minute." Santoria then took defendant outside in front of Moretti's.

¶ 17    Outside Moretti's, Santoria spoke to a short, white female with dark hair. When defendant asked Santoria what this woman said to him, the State objected that her statement was hearsay. At a sidebar, defendant stated that when the woman saw defendant being escorted out of Moretti's, she "blurt[ed] out, quote, it's mine, it's registered to me, I have a license." Defendant argued that the woman's statement fell under the excited utterance exception to the rule against hearsay. The court sustained the State's hearsay objection, explaining:

> "THE COURT: But they have not identified who the owner of the GAT Guns—or the business record is. Other than that person, there hasn't been a face with that name. And you just can't say the name without someone identifying her in court. I know it's tough, but, I mean, under these circumstances. Did she even say the gun—there's no—nobody said she saw the gun, right? So how could she say it's mine without seeing it? Under ordinary circumstances, if they were holding the gun and she said, that's mine, yeah. But under these circumstances where she didn't see the gun and nobody knows how she knew he had the gun, which leads to another question. Later on, someone is going to call her. And she could—
>
> [THE STATE]: She's here.
>
> THE COURT:—be guilty on accountability because she gave him the gun."

¶ 18    Santoria viewed a photo array on March 22, 2019, and identified defendant as the person "at the bar that night who had dropped something." Santoria identified the photo array in court, and the State moved it into evidence.

¶ 19    Oglesby testified that he was working at Moretti's on March 17, 2019. He saw defendant, whom he identified in court, as defendant was entering the bar and checked his identification.

Defendant was "with a female and another white male" when he entered the bar. Oglesby later saw Santoria and Anderson taking defendant out of the bar. After defendant was taken out of the bar, Oglesby spoke to Skilnik and learned that there was a firearm in the drawer of the host stand. Oglesby identified the firearm, its magazine, and .45-caliber bullets in court.

¶ 20    On March 25, 2019, Oglesby told police that he saw defendant talking with a white female with a short build "as soon as they came in[to]" Moretti's. On March 26, 2019, Oglesby viewed a photo array and identified defendant "as the person who was in the bar that night." He identified the photo array in court, and the State moved it into evidence.

¶ 21    Chicago police officer Patrick Binder testified he was on duty on the morning of March 17, 2019, wearing plainclothes and a police vest, when he and his partner responded to a call of a person with a gun at Moretti's. Binder spoke to Skilnik and was "led to the basement of Moretti's where they found a gun." Binder recovered the firearm in the basement and inventoried it. He identified the firearm, its magazine, and six .45-caliber bullets, and the State moved them into evidence. The firearm was not subjected to any kind of testing.

¶ 22    Binder identified a video recording from his body camera, which the State moved into evidence. The time stamp on the video indicates that it is from March 17, 2019. Binder identified a Moretti's employee leading him to the restaurant's basement office, where the firearm was located. The video depicts a black handgun in the office, which Binder identified as a "Glock 36 and the magazine." Binder recovers the gun.

¶ 23    Officer Lucas Papaloukas testified that he was on duty at 7:30 p.m. on March 26, 2019. He and his team went to an apartment on the 7700 block of West Higgins Avenue because they "received information that [defendant] was wanted for an incident that happened at Moretti's, and

he was positively identified in a photo array." Mrozek opened the rear door of the apartment and allowed Papaloukas and his team to enter. Inside the apartment, Papaloukas saw defendant, whom he identified in court. Papaloukas arrested defendant and Mrozek; Mrozek was arrested for "transmitting a false police report."

¶ 24    The parties stipulated that defendant had not been issued a valid FOID card or concealed carry license as of March 17, 2019.

¶ 25                                    2. Defense Case

¶ 26    Outside the presence of the jury, defendant informed the court that he intended to call Mrozek, who would testify that she was at Moretti's on March 17, 2019, and never saw defendant with her firearm. On March 18, 2019, Mrozek filed a police report alleging that her firearm had been stolen from her vehicle. On March 21, 2019, Mrozek told a detective that her firearm was missing from her vehicle. On March 26, 2019, Mrozek told a Detective Mohammed Hamideh that her firearm had "not gone missing, that the gun was not stolen; that she said those things because she was scared." Mrozek did not have a concealed carry license, but she did have a FOID card. According to the State, charges of filing a false police report against Mrozek were "dropped" on July 23, 2019.

¶ 27    The court appointed a Ms. Daniels to represent Mrozek "only for the purpose of her Fifth Amendment rights" because Mrozek could potentially be prosecuted for possessing a firearm in her vehicle without a concealed carry license.[1] Mrozek was then brought into the courtroom, and the court informed her that it was appointing Daniels, "a lawyer licensed to practice law in the

---

[1]The record does not indicate who Ms. Daniels is, but the parties agree she is an assistant public defender, and her first name is not contained in the record in this case.

State of Illinois," to "give [her] some legal advice" and then Mrozek would "tell [the court] whether [she] want[ed] to testify or not testify." After a recess, Mrozek returned to the courtroom and the following exchange occurred:

"[THE COURT]: State your name; spell your last name, for the record.

[MROZEK]: Jocelyn Mrozek—M-r-o-z-e-k.

Q: You've had a chance to talk to Ms. Daniels about testifying and not testifying; is that correct?

A: Yes, I have.

Q: And she's informed you that you do have a right to invoke your Fifth Amendment?

A: Yes.

Q: What is your wish? Are you going to testify?

A: I'm going to invoke my Fifth Amendment.

THE COURT: Thank you very much. Appreciate that. Thanks for coming."

Defendant did not object to any of the court's interactions with Mrozek.

¶ 28    The parties stipulated that Chicago police detective Hamideh interviewed Acance on March 26, 2019. Acance did not tell Hamideh that he heard defendant say "I dropped something" and did not tell Hamideh that he saw a firearm drop from the right side of defendant's waist.

¶ 29                                     3. Closing and Verdict

¶ 30    In closing, defendant argued that the firearm recovered in Moretti's on March 17, 2019, was not his firearm and he did not bring the firearm into the bar. He contended that the G.A.T. Guns records established that Mrozek owned the firearm and that no scientific, physical, or video

evidence connected defendant to the firearm. In rebuttal, the State argued that defendant got the firearm from Mrozek and possessed it inside Moretti's and that four Moretti's employees identified him as the person who dropped the firearm.

¶ 31    The jury found defendant guilty on all counts.

¶ 32                              C. Posttrial and Sentencing

¶ 33    Defendant filed a motion for a new trial, which argued that the evidence was insufficient to support the jury's findings of guilt, that the court erred by allowing Skilnik to testify "he believed the recovered gun in this case came from [defendant]'s body," and that the court erroneously denied defendant's motion for a directed verdict. At the hearing on this motion, defendant argued that the State failed to prove the charges against him beyond a reasonable doubt and that Skilnik should not have been allowed to testify that he believed the firearm fell from defendant's body. The court denied defendant's motion.

¶ 34    On February 4, 2020, the court sentenced defendant to 15 months' imprisonment on each count, with all three sentences to run concurrently, and one year of MSR. The court stated that "[a]ll of these come from the same act, so all the sentences have to run concurrent." Defendant filed a motion to reconsider sentence, which argued that the sentence was excessive and penalized defendant for exercising his right to trial. The court denied this motion.

¶ 35    Defendant timely appealed.

¶ 36                              II. ANALYSIS

¶ 37    On appeal, defendant challenges his inability to introduce Mrozek's admission to owning the firearm, the effectiveness of trial counsel, and his three separate convictions premised on one

act of possession of a firearm. He requests that we remand this case for a new trial, or, in the alternative, vacate his convictions for AUUW and leave his conviction for UUW intact.

¶ 38     The State maintains that defendant has forfeited these issues because he did not raise any of them in his posttrial motions. We agree. See *People v. Sebby*, 2017 IL 119445, ¶ 48 (to preserve an issue for appeal, a defendant must object at trial and raise the issue in a posttrial motion). Nevertheless, defendant asks that we consider these issues under the plain error doctrine. The plain error doctrine permits a reviewing court to consider an unpreserved error

> "(1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.*

Prior to addressing plain error, we must first determine whether any error occurred at trial. *Id.* ¶ 49.

¶ 39                    A. Mrozek's Admission to Owning the Firearm

¶ 40     Defendant first contends that the trial court effectively barred Mrozek's statement that she owned the firearm (1) by "inducing" her to invoke her fifth amendment privilege when she had no reasonable basis to fear prosecution and (2) by ruling that her statement to Santoria outside Moretti's was not admissible under the excited utterance exception to the rule against hearsay.

¶ 41                         1. Fifth Amendment Privilege

¶ 42     A fundamental element of due process is a defendant's right to present witnesses in his defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967). "That fundamental right is violated if the

State or the court exerts improper influence on defense witnesses causing them not to testify." *People v. Mancilla*, 250 Ill. App. 3d 353, 358 (1993).

¶ 43    The fifth amendment provides that no person shall be compelled to testify against herself in a criminal case. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Thus, a witness may invoke her fifth amendment privilege and refuse to answer potentially incriminating questions. *People v. Redd*, 135 Ill. 2d 252, 304 (1990). A trial court may appoint counsel to advise the witness, or the court may admonish the witness itself if it perceives a risk that the witness will incriminate herself. *People v. Radovick*, 275 Ill. App. 3d 809, 815 (1995); *People v. Morley*, 255 Ill. App. 3d 589, 597 (1994) (citing *People v. Pantoja*, 35 Ill. App. 3d 375, 380 (1976) and *People v. Schroeder*, 278 Cal. Rptr. 237 (Ct. App. 1991)). If the court admonishes the witness itself, "it must walk the fine line between, on the one hand, fully advising the witness of the danger of self-incrimination and the right not to testify, and, on the other hand, threatening the witness to an extent which materially impairs the defendant's due process right to present witnesses in his defense." (Internal quotation marks omitted.) *Morley*, 255 Ill. App. 3d at 597. While such admonishments are generally justified, they infringe upon a defendant's right to present a defense if (1) they may have caused the witness to decide not to testify and (2) they were "somehow improper." *People v. King*, 154 Ill. 2d 217, 224 (1993). A witness may be denied her fifth amendment privilege only when it is "perfectly clear, from a careful consideration of all the circumstances in the case," that her answers "cannot possibly have [a] tendency" to incriminate her. (Internal quotation marks omitted.) *People v. Craig*, 334 Ill. App. 3d 426, 446 (2002).

¶ 44    The trial court did not err with respect to Mrozek's invocation of her fifth amendment privilege. First, the court correctly concluded that Mrozek could reasonably fear prosecution if she

testified. According to defendant, Mrozek would have testified that she owned the firearm recovered in Moretti's on March 17, 2019, and that she never saw defendant with the firearm at Moretti's. The State indicated that Mrozek did not have a concealed carry license. Thus, Mrozek's potential testimony suggested that she brought the firearm into Moretti's without a concealed carry license. That testimony could have exposed her to prosecution for AUUW premised on her lack of a concealed carry license (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2018))) and UUW premised on her presence in a bar (*id.* § 24-1(a)(8)) or under a theory of accountability.

¶ 45    More importantly, Mrozek's fear of prosecution was not speculative because she had already been charged with a crime in connection with this case; namely, filing a false police report. While the State indicated that those charges had been "dropped" in July 2019, the record provides no indication as to whether those charges could have been reinstated. If the charges had been stricken on leave to reinstate (SOL'd), Mrozek's admission, under oath, that her firearm was not missing from her vehicle could have caused charges of filing a false police report to be reinstated. See *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 101 (2004) ("a case which has been SOL'd remains pending"). Nothing in the record suggests that the State offered Mrozek immunity, and the State does not claim that they did. Thus, the court was correct to conclude that Mrozek could reasonably fear prosecution if she testified.

¶ 46    Second, the court, in admonishing Mrozek, certainly did not make an " 'unnecessarily strong' " or " 'threating' " admonishment that induced her not to testify. See *King*, 154 Ill. 2d at 224 (quoting *Webb v. Texas*, 409 U.S. 95, 98 (1972) (*per curiam*)). Rather, the court informed Mrozek that she had the option of testifying or invoking her fifth amendment rights and that it was appointing Daniels, a lawyer, to advise her about whether she should testify. After Mrozek spoke

with Daniels, the court asked Mrozek whether she wished to testify. Mrozek stated that she wished to invoke her fifth amendment privilege and not testify. The court's decision to appoint Daniels to advise Mrozek was proper (see *Morley*, 255 Ill. App. 3d at 597), and, because no improper admonishment of Mrozek occurred, there was no admonishment that infringed on defendant's right to present a defense. Thus, no error occurred, and plain error review is not warranted.

¶ 47     Defendant argues that the court's appointment of Daniels to advise Mrozek violated section 3-4006 of the Counties Code (55 ILCS 5/3-4006 (West 2020)) because Mrozek was not charged with a crime, in custody, or indigent; thus, she was not entitled to representation by an assistant public defender. However, a trial court is authorized to appoint an assistant public defender to advise a witness of her fifth amendment rights. See, *e.g.*, *Pantoja*, 35 Ill. App. 3d at 380; *People v. Hammond*, 196 Ill. App. 3d 986, 993 (1990).

¶ 48     In addition, defendant contends that the trial court improperly allowed Mrozek to assert a "blanket" fifth amendment privilege rather than requiring her to invoke that privilege in response to individual questions. Defendant cites only federal cases in support of this argument; specifically, *United States v. Cascella*, 943 F.3d 1 (1st Cir. 2019), and *Shakman v. Democratic Organization of Cook County*, 920 F. Supp. 2d 881 (N.D. Ill. 2013). These cases are not binding authority upon us (*State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34), and the Illinois authority cited above establishes that the court's approach to this issue was not in error. Accordingly, the trial court did not err in allowing Mrozek to invoke her fifth amendment privilege.

¶ 49                                    2. Excited Utterance

¶ 50    Defendant also contends that the court should have admitted the statement of the woman outside Moretti's to Santoria that she owned the firearm under the excited utterance exception to the rule against hearsay.

¶ 51    Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay is generally not admissible. Ill. R. Evid. 802 (eff. Jan. 1, 2011). The statement defendant sought to introduce was hearsay because it occurred out of court, in front of Moretti's, and because defendant offered it to prove the truth of the matter asserted, *i.e.*, that the woman owned the firearm. Thus, this statement was hearsay and not admissible.

¶ 52    However, Illinois Rule of Evidence 803(2) (eff. Sept. 28, 2018) provides that an excited utterance is not excluded by the rule against hearsay. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* "[F]or this exception to apply, there must be (1) an event sufficiently startling to produce a spontaneous and unreflecting statement, (2) an absence of time to fabricate, and (3) a relation between the statement and the circumstances of the event." (Internal quotation marks omitted.) *People v. Mayberry*, 2020 IL App (1st) 181806, ¶ 27. We review the trial court's determination regarding the excited utterance exception for an abuse of discretion. *People v. Stiff*, 391 Ill. App. 3d 494, 501 (2009). An abuse of discretion occurs only where the court's ruling is arbitrary, fanciful, or unreasonable. *People v. Connolly*, 406 Ill. App. 3d 1022, 1026 (2011).

¶ 53    We find that the trial court's exclusion of the woman's statement to Santoria was not an abuse of discretion. There was not an adequate basis to conclude that there was an occurrence

sufficiently startling to produce a spontaneous and unreflecting statement from her. Although the record suggests that Mrozek may have been the declarant, no witness testified to that, and there is no indication that Santoria would have been able to identify Mrozek as the declarant. There was also no information regarding the declarant's connection to defendant, if any. Thus, there was no basis to conclude that the declarant seeing defendant being escorted out of Moretti's would be startling to her. Even if it was, there was sufficient time to fabricate. Moreover, the evidence established that the firearm did not exit Moretti's along with defendant; rather, it was recovered inside the bar and stayed there until police inventoried it. Thus, there was no explanation for why the declarant would spontaneously admit to owning a firearm when she did not see a firearm outside the bar and only presumed it was hers. Santoria did not testify as to whether he asked the declarant any questions about the firearm that would have prompted such a statement. The record on this issue is too sparse for us to conclude that the trial court's evidentiary ruling was an abuse of discretion, especially when the declarant never viewed the firearm to make her statement reliable.

¶ 54　　Defendant argues that the trial court "did not go through the three requirements under the rule in deciding the statement's admissibility." There is no case law that compels the trial court to go through the three requirements on the record, and we cannot say that the trial court did not decide the issue based on those requirements. We review the court's evidentiary ruling for an abuse of discretion, and we find none. Accordingly, the trial court did not err in declining to admit this statement under the excited utterance exception to the rule against hearsay.

¶ 55　　　　　　　　B. Ineffective Assistance of Counsel

¶ 56    Defendant next contends that trial counsel rendered ineffective assistance by (1) failing to ask any questions of the prospective jurors, (2) failing to object to the court's handling of Mrozek's invocation of her fifth amendment privilege, and (3) failing to recall Santoria to testify about Mrozek's statement as a statement against interest under Rule 804(b)(3).

¶ 57    We review ineffective assistance of counsel claims under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Manning*, 241 Ill. 2d 319, 326 (2011). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. To establish deficient performance, a defendant must show "that counsel's performance was objectively unreasonable under prevailing professional norms." *People v. Domagala*, 2013 IL 113688, ¶ 36. Under this prong, a defendant has the burden to "overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 54.

¶ 58    "To establish prejudice, a defendant must show that but for counsel's deficiency, 'there is a reasonable probability that the result of the proceeding would have been different.' " *People v. Brown*, 2015 IL App (1st) 122940, ¶ 47 (quoting *People v. Houston*, 229 Ill. 2d 1, 11 (2008)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If it is easier to resolve an ineffective assistance claim based on a failure to demonstrate prejudice, a court need only address that prong. *Id.* at 697.

¶ 59                          1. Failure to Question Prospective Jurors

¶ 60    Defendant acknowledges that there is no Illinois authority directly addressing whether defense counsel asking no questions of prospective jurors constitutes ineffective assistance. We

have held that, generally, "[t]he decision as to whether to question a potential juror on a particular subject is considered to be one of trial strategy, which has no bearing on the competency of counsel." *People v. Furdge*, 332 Ill. App. 3d 1019, 1026 (2002). Specifically, *Furdge* and related authority establish that counsel's decision not to question prospective jurors about bias against gang-related evidence is a matter of trial strategy that cannot support a claim of ineffective assistance. See, *e.g.*, *People v. Powell*, 355 Ill. App. 3d 124, 141-43 (2004); *People v. Benford*, 349 Ill. App. 3d 721, 733 (2004). However, the instant case does not involve gang-related evidence or a lack of questions about specific topics, so these cases provide little guidance. We express no opinion on whether defense counsel's decision to ask no questions of prospective jurors was reasonable trial strategy.

¶ 61    Regardless, defendant cannot establish prejudice. Prior to *voir dire*, the trial court properly instructed the prospective jurors on the principles of criminal justice outlined in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Thereafter, the State's questioning of prospective jurors was largely limited to matters raised in the juror questionnaire form. The argument that defense counsel asking some set of unidentified questions rather than no questions would have produced a different outcome at trial is speculative, and speculation cannot establish prejudice. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice."). Thus, this claim of ineffective assistance fails.

¶ 62    Defendant argues that he was prejudiced because the State "buil[t] a relationship with" with prospective jurors by asking flattering follow-up questions while defense counsel did not interact with the prospective jurors at all. Defendant points to the State making mild compliments and asking friendly questions about 11 prospective jurors. Of those 11 prospective jurors, 6 were

not even seated on the jury. Of the five who were seated on the jury, the State asked whether their children were in school, complimented their children playing chess and football, asked what kind of dogs they owned, asked how their child's sports seasons went, and asked if their grandson spelled his name the same way as a celebrity. We cannot see how these interactions with the jurors prejudiced defendant such that the outcome of the trial was affected.

¶ 63    Defendant also argues that trial counsel was "effectively absent" during jury selection. The record shows that this is overstated. Similarly, defendant cites *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), to argue that prejudice is presumed where counsel "was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." But neither of those things happened in this case; counsel was present for and participated in jury selection and was never prevented from assisting defendant. As noted above, trial counsel was present in the courtroom during jury selection, exercised all his peremptory challenges, and joined the State in two challenges for cause. Thus, *Cronic* does not warrant a presumption of prejudice or reversal.

¶ 64    Defendant cites *Miles v. State*, 644 S.W.2d 23, 24 (Tex. App. 1982), for the proposition that a defense attorney "who asks no questions [of prospective jurors] has really provided no assistance," and that there is "no tactical advantage to stand mute." The decision of the Court of Appeals of Texas is not binding authority upon us (*People v. Sullivan*, 366 Ill. App. 3d 770, 781 (2006)), and it does not appear that any Illinois courts have followed *Miles*. Even the Court of Appeals of Texas declined to follow *Miles* when a defense attorney asked no questions of prospective jurors but exercised all his peremptory challenges and struck jurors by agreement with the State, as occurred in this case. See *Williams v. State*, 970 S.W.2d 182, 184 (Tex. Ct. App. 1998). Accordingly, this claim of ineffective assistance fails.

¶ 65        2. Failure to Object to Mrozek Invoking Fifth Amendment Privilege

¶ 66    Defendant also contends counsel was ineffective for failing to object to the trial court's appointment of Daniels as counsel for Mrozek and to the court allowing Mrozek to invoke her fifth amendment privilege. As explained above, the trial court did not commit error with respect to that issue. Because the trial court did not err, trial counsel's forfeiture of this issue by failing to object would not have prejudiced defendant because the trial court was within its right to admonish Mrozek and any objection would have been overruled. See *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). Thus, this claim of ineffective assistance fails as well.

¶ 67                    3. Failure to Recall Santoria

¶ 68    Defendant next argues that trial counsel was ineffective because, after Mrozek invoked her fifth amendment privilege, counsel failed to recall Santoria to testify to her admission to owning the firearm as a statement against interest under Illinois Rule of Evidence 804(b)(3) (eff. Jan. 1, 2011).

¶ 69    Rule 804 applies when a declarant is unavailable, such as when the declarant "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Ill. R. Evid. 804(a)(1) (eff. Jan. 1, 2011). Mrozek became unavailable when she invoked her fifth amendment privilege; thus, Rule 804 applies. See *People v. Wright*, 2017 IL 119561, ¶ 81 ("[A] declarant who properly asserts h[er] fifth amendment right not to testify is unavailable for purposes of the rule.").

¶ 70    If a witness if unavailable, her statement against interest is not excluded by the rule against hearsay. Ill. R. Evid. 804(b)(3) (eff. Jan. 1, 2011). A statement against interest is a

"statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id.* However, a "statement tending to expose the declarant to criminal liability and offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

¶ 71 Defendant cannot establish prejudice regarding counsel's failure to recall Santoria. Even if counsel had called Santoria and he had testified that Mrozek stated, "[I]t's mine, it's registered to me, I have a license," that would not have negated defendant's possession of the firearm.[2] Possession of a firearm and ownership of a firearm are not equivalent. See, *e.g.*, *People v. Robinson*, 33 Ill. App. 3d 24, 35 (1975) ("there may be a transfer of ownership [of a firearm] with or without a transfer of actual possession, and there may be a transfer of actual possession with or without a transfer of ownership"). All charges against defendant were premised on his possession of the firearm, not his or anyone else's ownership of it. To the extent that Mrozek's ownership of the firearm was relevant, the jury received the G.A.T. Guns records showing that she purchased the gun on March 7, 2019. Thus, Santoria's testimony regarding Mrozek's statement would not have provided the jury with any new information. Accordingly, there is no reasonable probability that Santoria's testimony would have changed the outcome of trial, defendant was not prejudiced, and this claim of ineffective assistance fails.

---

[2]As noted above, nothing in the record suggests that Santoria would have been able to identify Mrozek as the declarant or that he would have testified that she admitted to ownership of the firearm.

¶ 72                      C. One-Act, One-Crime Violation

¶ 73    Finally, defendant maintains, and the State agrees, that his three convictions violate the one-act, one-crime rule of *King*, 66 Ill. 2d 551, because they are based on one act of possession of a firearm. The parties request that, in the interests of judicial economy, we vacate defendant's AUUW convictions under Illinois Supreme Court Rule 615 and leave his conviction for UUW intact.[3] We review one-act, one-crime violations under plain error because they implicate the integrity of the judicial process. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 74    In *King*, our supreme court found that "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act," also known as the one-act, one-crime rule. *People v. Coats*, 2018 IL 121926, ¶ 11. Whether a defendant was incorrectly sentenced for multiple offenses based upon the same act is a question of law subject to *de novo* review, meaning that we perform the same analysis that the trial court would perform. *People v. Cross*, 2019 IL App (1st) 162108, ¶ 147.

¶ 75    We agree with the parties that defendant's three convictions violate the one-act, one-crime rule. Although defendant's possession of a firearm constituted multiple offenses under Illinois law, his possession of that firearm was a single physical act. A defendant cannot be convicted for multiple crimes relating to the use of a firearm when only one firearm was involved. *People v.*

---

[3]It appears that defendant is no longer in prison but is on parole. The Illinois Department of Corrections Website (*Internet Inmate Status*, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/ search/inms_print.asp?idoc=Y41267 (last visited Jan. 25, 2022) [https://perma.cc/YEL5-DNXZ]) indicates that he was paroled on July 14, 2020, but his sentence has not been discharged and his discharge date is "to be determined." We may take judicial notice of this information. See *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 4 n.1.

*Grant*, 2017 IL App (1st) 142956, ¶ 33. Thus, defendant's three separate convictions violate the one-act, one-crime rule.

¶ 76   When multiple convictions violate the one-act, one-crime rule, only the most serious conviction can stand. *People v. Garcia*, 179 Ill. 2d 55, 71 (1997). However, "when it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination." *People v. Artis*, 232 Ill. 2d 156, 177 (2009). To determine whether one offense is more serious than another, we look to the possible punishments and which offense has the more culpable mental state. *Id.* at 170-71. In this case, all three of defendant's convictions are Class 4 felonies that carry a penalty of one to three years' imprisonment, and all three offenses require the mental state of knowledge. See 720 ILCS 5/24-1(a)(8), (b) (West 2018); 720 ILCS 5/24-1.6(a)(3)(A-5), (C), (d)(1); 730 ILCS 5/5-4.5-45(a) (West 2018). Thus, we cannot determine which of these offenses is the most serious, so we must remand the case to the trial court to make that determination.

¶ 77                                        III. CONCLUSION

¶ 78   For the foregoing reasons, we affirm the jury's findings of guilt, reverse defendant's convictions for all three offenses as violative of the one-act, one-crime rule, and remand this case for determination of which offense is the most serious.

¶ 79   Affirmed in part, reversed in part, and remanded with directions.

No. 1-20-0436

| | |
|---|---|
| **Cite as:** | *People v. Sapp*, 2022 IL App (1st) 200436 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-5063; the Hon. Vincent M. Gaughan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Emily Scout Distefano, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak, Jon J. Walters, and David B. Greenspan, Assistant State's Attorneys, of counsel), for the People. |