2021 IL App (2d) 190408
No. 2-19-0408
Opinion filed February 16, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-333 |
| LIONEL MORALES, | ) ) ) | Honorable William P. Brady, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Lionel Morales, was charged with one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) and two counts of domestic battery (*id.* § 12-3.2(a)(1), (a)(2)), stemming from an incident that took place between defendant and the victim, Nicole Ross. Prior to trial, the State filed a motion *in limine* seeking to admit into evidence the recording of Ross's phone call to 911. The trial court granted the motion, ruling that the first 33 seconds of the call were admissible under the excited-utterance exception to the hearsay rule. Following a bench trial, defendant was found guilty of all charges. The court sentenced defendant on the aggravated-domestic-battery conviction to 60 days in jail and 24 months of probation. On appeal, defendant argues that the court abused its discretion in admitting Ross's statement to the 911 operator—that

defendant choked her—because the statement was a direct result of questioning by the 911 operator. For the reasons that follow, we affirm.

¶ 2                                        I. BACKGROUND

¶ 3      The evidence adduced at trial established the following. Ross testified that she had dated defendant for about nine months. On May 5, 2017, Ross was dropped off at home by a male friend, and she hugged her friend goodbye. Defendant, who was waiting for Ross at Ross's house, exited the house yelling at Ross and calling her a whore. Defendant punched Ross with a closed fist in the face. Ross and defendant went inside the house, where defendant continued to yell at her. Defendant hit Ross a few times more in the face. They moved into the living room, and defendant threw Ross down to the floor by her shirt. Defendant got on top of Ross and started to choke her by putting his arm around her neck. Ross could not breathe and began to fade in and out of consciousness. Defendant let Ross go when she let her body go limp. Ross picked up defendant's phone from the floor and ran into the bathroom to call 911.

¶ 4      Ross testified that People's Exhibit No. 6 was a fair and accurate recording of her call to 911. The first 33 seconds of the call were played in court, with defendant renewing his objection that Ross's comment that defendant choked her was no longer an excited utterance. The call went as follows:

> "DISPATCHER: 911, where is your emergency?
>
> ROSS: I need help! I need help!
>
> DISPATCHER: Where are you?
>
> ROSS: (unintelligible) Wildflower Street Cortland.
>
> DISPATCHER: Where do you ne—where do you need help?
>
> ROSS: 568 Wildflower Street in Cortland.

DISPATCHER: Okay. What kind of help do you need there?

ROSS: Um—domestic.

DISPATCHER: Okay. Are you hurt?

ROSS: Yes.

DISPATCHER: Okay. What did he do to you?

ROSS: (unintelligible)[1] *** choked me.

DISPATCHER: Is this your boyfriend or husband?

ROSS: Yes. Boyfriend."

¶ 5    Cortland police officer Daniel Gregory responded to the scene. Gregory testified that Ross had a bloody nose and lacerations to her head and face. Pictures of Ross's injuries were admitted as People's Exhibit Nos. 1 through 5. At the scene, defendant told Gregory that he became upset and confronted Ross after seeing her kiss someone. Defendant admitted that when Ross tried to walk away, he grabbed her in a bear hug. Further, he refused to release her and threw her to the ground when she tried to push away.

¶ 6    Defendant testified that he was at Ross's house when she arrived. He became upset when he saw Ross kiss a man who was dropping her off. Defendant stormed out of the house, yelling at Ross. The man started to drive away. As defendant approached the vehicle, Ross tried to push defendant away. Defendant grabbed Ross by the neck and threw her to the ground. Ross's face hit the concrete. Defendant testified that Ross's neck was in the crook of his arm for a second, at most.

---

[1] Both parties indicate that Ross replied: "*Sometimes he*, f*** choked me." However, it sounds more like she stated: "*Punched me*, f*** choked me." In any event, there is no dispute that Ross clearly stated that defendant choked her.

They both went into the house. Ross pushed defendant and clawed his face. Defendant pushed Ross, and she fell into the living room. When defendant went upstairs to get his son, he heard Ross go into the upstairs bathroom and call 911.

¶ 7    The trial court found defendant guilty of all charges. The court denied defendant's motion for reconsideration of the finding of guilty or, in the alternative, for a new trial. The court sentenced defendant on the aggravated-domestic-battery conviction to 60 days in jail and 24 months of probation.

¶ 8    This timely appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    Defendant argues that the trial court abused its discretion in admitting as an excited utterance Ross's statement to the 911 operator—that defendant choked her—because the statement was a direct result of questioning by the 911 operator. The State responds that the statement was properly admitted and that, even if it were not, any error was harmless.

¶ 11    " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Although hearsay is generally inadmissible (see Ill. R. Evid. 802 (eff. Jan. 1, 2011)), various exceptions exist, including an exception for a statement deemed to be an excited utterance. See Ill. R. Evid. 803(2) (eff. Apr. 26, 2012). An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* (This exception is also referred to as the spontaneous-declaration exception. See *People v. Sutton*, 233 Ill. 2d 89, 107 (2009).)

¶ 12    For a hearsay statement to be admissible under the excited-utterance exception, the court must find that (1) there was "an occurrence sufficiently startling to produce a spontaneous and

unreflecting statement," (2) there was "an absence of time for the declarant to fabricate the statement," and (3) the statement "relate[s] to the circumstances of the occurrence." *Id.* (citing *People v. Williams*, 193 Ill. 2d 306, 352 (2000)). Courts use a totality-of-the-circumstances analysis to decide whether a statement is admissible under the excited-utterance exception. *Id.* Courts consider several factors, including the passage of time, the declarant's mental and physical condition, the nature of the event, and whether the statement is in the declarant's self-interest. *Id.*

¶ 13    "Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the court has abused that discretion." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 14    Defendant's challenge to the admission of Ross's statement concerns the issue of spontaneity. According to defendant, Ross's statement to the 911 operator that defendant choked her was an "act of reflection" that was "instigated by questioning from the 911 operator." We disagree. "Although a statement made in response to persistent interrogation might not be admitted under the spontaneous declaration exception [citation], the fact that a statement was made in response to a question does not necessarily destroy spontaneity [citation]." *Williams*, 193 Ill. 2d at 353. The critical inquiry is " 'whether the statement was made while the excitement of the event predominated.' " *People v. Smith*, 152 Ill. 2d 229, 260 (1992) (quoting Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.3, at 627 (5th ed. 1990)).

¶ 15    In *Smith*, our supreme court held that a young child's statement to a police officer at a murder scene was an excited utterance where the child was obviously frightened (she was huddled in a corner with a blanket over her head). The officer had arrived within 5 to 10 minutes of a 911 call reporting a fight. The court noted that the officer was the first person to whom the child spoke

after the victim's death. The court was not dissuaded by the fact that the child's statement, which referenced the defendant, was made in response to questioning by the officer. *Smith*, 152 Ill. 2d at 260-61.

¶ 16    By comparison, in *People v. Busch*, 2020 IL App (2d) 180229, ¶ 42, we found that statements made to a 911 operator were not excited utterances, because the victim spoke to several people before making those statements. However, in so holding, we specifically noted that "the reason that the statements at issue here lack spontaneity is not because the 911 operator asked [the victim] questions—they lack spontaneity because [the victim] talked to several people before she talked to the 911 operator." *Id.* ¶ 43.

¶ 17    In *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 37, the Fourth District held that the victim's statements to a 911 operator were sufficiently spontaneous for purposes of the excited-utterance exception, even though the victim had unsuccessfully attempted to seek assistance from a neighbor before calling 911 and even though she made her statements in response to the operator's questions. The court relied on the victim's upset and distraught demeanor during the call and the fact that the victim's intent in making the call was to seek help and medical treatment. *Id.*

¶ 18    Here, the evidence makes clear that Ross called 911 while the startling nature of the event predominated. As soon as defendant let Ross go, Ross immediately picked up defendant's phone from the floor and ran to the upstairs bathroom to call 911. The 911 recording indicates that Ross was distraught. The call began with Ross yelling, "I need help! I need help!" Ross was breathing heavily and needed to state her address twice because the operator could not understand her. Within the first 33 seconds of the phone call, after obtaining basic information from Ross, the operator asked Ross what defendant had done. The operator's preliminary questions were clearly an effort

to determine the nature of the situation and the type of assistance that Ross required, rather than a persistent interrogation. Under the circumstances, the fact that Ross's statement—that defendant had choked her—was made in response to the operator's question did not destroy its spontaneity. Ross's demeanor indicated that she remained under the effect of a startling event when she made the call. Additionally, the 911 operator was the first person she spoke with, and the call was made to seek assistance. Based on the foregoing, we hold that the trial court did not abuse its discretion in admitting Ross's statements to the 911 operator.

¶ 19                                    III. CONCLUSION

¶ 20    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 21    Affirmed.

---

**No. 2-19-0408**

---

| | |
|---|---|
| **Cite as:** | *People v. Morales*, 2021 IL App (2d) 190408 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 17-CF-333; the Hon. William P. Brady, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Kerry Goettsch, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Leslie Martin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---