2022 IL App (1st) 211027-U

SECOND DIVISION
December 27, 2022

No. 1-21-1027

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 7906 |
| | ) | |
| JOSEPH MATHIS, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County convicting defendant of first degree murder and aggravated battery with a firearm; the trial court did not abuse its discretion in admitting a recording of a 9-1-1 call made at the time of the offense as evidence; defendant's claim of error in the trial judge's admonishment of potential jurors pursuant to Illinois Supreme Court Rule 431(b) is forfeited and not reviewable as plain error because the evidence was not closely balanced.

¶ 2    In October 2002 a jury found defendant, Joseph Mathis, guilty of first degree murder of one victim and aggravated battery with a firearm of another victim. The circuit court of Cook County sentenced defendant to an aggregate term of imprisonment of 60 years. Defendant timely appealed his conviction on the grounds (1) the trial court erroneously admitted a recording of a 9-1-1 call made at the time of the offense over defense objection and (2) the trial judge denied

defendant a fair trial because the trial judge failed to properly admonish the venire pursuant to Illinois Supreme Court Rule 431(b) (eff. Jul. 1, 2012).

¶ 3    For the following reasons, we affirm the trial court's judgment convicting defendant of first degree murder and aggravated battery with a firearm.

¶ 4                                 BACKGROUND

¶ 5    The State's prosecution of defendant arises from the shooting death of Cometra Hollins and the shooting of Kenneth Edwards. The evidence adduced at trial shows that at approximately 11:00 a.m. on the morning of December 13, 2011, Hollins and Edwards were shot while standing on a street corner. At 11:18 a.m. a person identifying themselves as Hollins called 9-1-1 and said that "Joseph" shot him and that he was bleeding. Paramedics transported Hollins to the hospital where he died later that day. Edwards survived and, along with another eyewitness, identified defendant as the shooter from both a photo array and in-person lineup before trial.

¶ 6    The State filed a motion *in limine* to admit a recording of a 9-1-1 call Hollins allegedly made in which Hollins informed the dispatcher than he had been shot. The dispatcher asked Hollins, "Do you know who did this to you," to which Hollins responded, "Joseph did this to me." The State's motion *in limine* argued that Hollins's statement to the 9-1-1 dispatcher was a dying declaration because Hollins had been shot multiple times and died later that day. The defense argued against the motion arguing there was no evidence Hollins knew that he was dying. The trial court admitted the recording as a dying declaration or, alternatively, as an excited utterance.

¶ 7    When jury selection began the trial judge made the following statement to the potential jurors:

"[Defendant] as with other persons charged with crimes is presumed to be innocent of the charges that bring him before you. That presumption cloaks him now at the onset of the trial and will continue to cloak him throughout the course of the proceedings that is during the jury selection, during the opening statements that the lawyers will be given an opportunity to make to you, during the presentation of the evidence, during the closing arguments that the attorneys may give, during the instructions of law that I will read and provide to you and on into your deliberations unless and until you individually and collectively are convinced beyond a reasonable doubt that the defendant is guilty.

It is absolutely essential as we select this jury that each of you understand and embrace these fundamental principles, that is, that all persons charged with a crime are presumed to be innocent and that it is the burden of the State who has brought the charges to prove the defendant guilty beyond a reasonable doubt. What this means is that the defendant has no obligation to testify in his own behalf or to call any witnesses in his defense. He may simply sit here and rely upon what he and his lawyer perceive to be the inability of the State to present sufficient evidence to meet their burden of proof. Should that happen you will have to decide the case on the basis of the evidence presented by the prosecution. The fact that the defendant does not testify must not be considered by you in any way in arriving at your verdict. However, should a defendant elect to testify or should his lawyer present witnesses in his behalf you are to consider that evidence in the same manner and by the same standards as the evidence presented by the state's attorneys. The bottom line, however, is that there is no burden upon the

defendant to prove his innocence. It is the State's burden to prove him guilty beyond a reasonable doubt."

¶ 8    During the *voir dire* of the jury venire, the trial judge initially asked four of the remaining members of the first panel of twelve potential jurors the following questions:

"[T]he State has the burden of proof beyond a reasonable doubt do all four of you agree with and accept that proposition of law?"

* * *

The defense has no burden, he is presumed innocent, he doesn't have to testify, he doesn't have to call any witnesses; if he doesn't testify, you can't hold that against him, do you all agree with and accept those propositions of law?"

¶ 9    Each potential juror responded by indicating that they do agree with and accept those propositions of law. Thereafter, the trial judge asked each potential juror from the first panel of 12 potential jurors individually the same two questions quoted above using almost identical language each time. Each time, the potential juror who was later seated on the jury responded "Yes," they did agree with and accept those propositions of law. After the trial court seated a second and third panel of 12 potential jurors, the trial court again asked four remaining potential jurors the identical questions and each time received an identical response as above. After inquiring of four remaining members of the third panel of potential jurors, the trial judge asked individual potential jurors who were eventually seated on the jury, including two alternates, the same questions. The State concedes the trial judge did not ask any potential jurors whether they "understood" these principles of law.

¶ 10    On appeal, defendant does not challenge the sufficiency of the evidence to convict him if the statement to the 9-1-1 dispatcher is admissible.[1] Therefore, a lengthy recitation of the facts of the offense is not necessary. For the proper context, we note only the following. An eyewitness testified that on December 13, 2011, they saw defendant fire a gun into a group of people standing on a street corner striking Hollins and Edwards. The witness did not report the shooting to police until police stopped the witness for a traffic violation and arrested them on a separate charge. After their arrest the witness told police about the shooting and identified defendant as the shooter first from a photo array and later from a lineup.

¶ 11    Edwards testified that on the morning of December 13, 2011 at approximately 11:00 a.m., he and Hollins were standing in a group of people on a street corner when they saw defendant approaching the group. Edwards testified defendant had a gun and began firing at them and Hollins. Edwards knew defendant from the neighborhood where defendant was called "Joseph" or "4 Joe." While in the hospital Edwards told police that defendant was the shooter and he later identified defendant as the shooter from a photo array. Both witnesses were familiar with and knew defendant. A paramedic who responded to the shooting testified that they treated Edwards and that Edwards told the paramedic that an unknown person had shot them.

¶ 12    A 9-1-1 dispatcher testified that while on duty that day at 11:18 a.m. she received a call from a person identifying themselves as Hollins. The 9-1-1 dispatcher and a fire department paramedic dispatcher were on the call. In response to a question by the 9-1-1 dispatcher Hollins

---

[1]    According to defendant, "*without the caller's hearsay identification statements* in the 911 [*sic*] audio recording the only other evidence against Mathis was, in fact, entirely circumstantial in nature, and was otherwise insufficient to sustain his conviction on its own." (Emphasis added.) We note this, despite the multiple identifications by two additional eyewitnesses to the shooting, defendant's arguments questioning the weight of their identifications of defendant as the shooter notwithstanding.

stated that Joseph had shot them, described what Joseph was wearing, and asked paramedics to hurry.

¶ 13     Defendant adduced evidence of an alibi from testimony by his aunt that defendant was with her at the time of the shooting.

¶ 14     The jury found defendant guilty of the first degree murder of Hollins and the aggravated battery with a firearm of Edwards. Defendant filed a posttrial motion attacking, *inter alia*, the admission of the recording of the 9-1-1 call. The trial court denied defendant's posttrial motion and sentenced defendant to twenty years' imprisonment for murder with a 25-year sentence enhancement for personally discharging a firearm during the commission of the offense and a consecutive term of 15  years' imprisonment for aggravated battery with a firearm.

¶ 15     This appeal followed.

¶ 16                                    ANALYSIS

¶ 17     On appeal, defendant first argues the trial court erred in admitting the recording of the 9-1-1 call into evidence because the State failed to lay a proper foundation for the admission of the recording, specifically, to establish whether it was Hollins's voice on the 9-1-1 call. Defendant also argues the statements in the recording were not admissible under either the dying declaration or excited utterance exceptions to the rule against hearsay. Defendant argues the error was unfairly prejudicial and not harmless and asks this court to reverse his convictions and remand the case for a new trial. "[T]he admissibility of trial evidence rests in the trial court's sound discretion, and we will not reverse its ruling absent an abuse of that discretion" *People v. Rios*, 2022 IL App (1st) 171509, ¶ 76.

¶ 18     Initially we address the State's argument defendant forfeited all of his arguments attacking the admission of the recording of the 9-1-1 call by failing to both raise the issues at trial

and in a posttrial motion. The State also briefly notes that its motion to admit the statements allegedly by Hollins to the 9-1-1 dispatcher was not part of the initial record on appeal and any ambiguity resulting from the absence of that motion from the record must be construed against defendant and in favor of the judgment below. Regarding the lack of an adequate foundation, the State claims defendant forfeited the issue by failing to raise the issue at trial and only raising it posttrial (but nonetheless the posttrial argument is forfeited as untimely); as for satisfying the requirements for a dying declaration the State claims defendant did raise that issue at trial but failed to renew the issue in his posttrial motion, thereby forfeiting the issue; and regarding defendant's argument the State failed to prove the statements on the recording qualify as an excited utterance the State claims defendant failed to raise that issue either at trial or in a posttrial motion. Regardless, the State argues, all of defendant's arguments lack substantive merit.

¶ 19    Defendant replies to the State's forfeiture claims by noting, correctly, that they supplemented the record on appeal with a copy of the State's "Motion to Admit Statements of the Deceased Victim" wherein the State asked the trial court to admit the statements on the 9-1-1 recording as Hollins's excited utterance or alternatively as a dying declaration. Defendant does not directly address the State's claims defendant failed to raise the lack of foundation (1) for the identity of the caller before trial, (2) for a dying declaration posttrial, and (3) for an excited utterance before or after trial.

¶ 20    We have reviewed the relevant portions of the reports of proceedings below and pleadings on file in the record and found the following. Immediately before trial the State notified the court it had filed a motion to admit the statements on the recording of the 9-1-1 call. The motion to which the State referred is a part of the record and does ask the court to admit the statement as either an excited utterance or a dying declaration. Before the trial court, the State

orally asked the court, "with the proper foundation, that that statement be admitted" into evidence "based on basically a dying declaration." Defendant's attorney objected on the ground "[t]here's no evidence that the victim knew he was dying." Defendant did not argue the State failed to provide sufficient evidence to identify the caller.

¶ 21 Defendant filed a posttrial motion for a new trial and an amended motion for a new trial, neither of which asks for a new trial based on the allegedly erroneous admission of the 9-1-1 recording. At the hearing on defendant's posttrial motion defendant orally added two issues. Defense counsel stated:

> "Judge, [defendant] has asked me to add two paragraphs to the written motion. I would argue, one, the Court erred in admitting the following evidence offered by the State over objection. An audio recording of a phone call received by Chicago's Office of Emergency Management, allegedly made by Victim Cometra Hollins, in which the caller stated, Joseph shot me. The Court erred when it ruled that said evidence would be admitted as an excited utterance or dying declaration, when the testimony at trial established the phone call was made at 11:18, which was some 15 minutes after the police arrived on scene and after Mr. Hollins was transported to the hospital. The fact the call was received after the officers were on scene and the fire department replied belies the fact that Mr. Hollins would have made the call. The entry of the call as evidence in this case denied defendant a fair trial and due process under the fourteenth amendment of the U.S. Constitution.
>
> The second point [defendant] asked me to make is that Ms. Wanda Hollins-Smith was the aunt of the victim, Cometra Hollins—I'm sorry. Ms.

> Wanda Hollins-Smith gave a sworn affidavit that Mr. Marvin Jackson—the
> witness—did not witness the shooting but that it happened prior to his arrival on
> the scene. ***."

Defendant's attorney concluded that "[o]ther than that, sir, I stand on my written motion."

¶ 22    Finally, we have found no claim by defendant in this record that the caller's statements on the 9-1-1 recording do not satisfy the excited utterance requirements, either in defendant's pretrial arguments in opposition to the State's motion to admit those statements, or defendant's written posttrial motion, or defendant's oral posttrial arguments on defendant's motion.

¶ 23    First, we note that "[t]he rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002) (quoting *Bright v. Dicke,* 166 Ill. 2d 204, 210 (1995)). Second, the well-established rule is that:

> "[t]o preserve an error for review on appeal, a party must both (1) object at
> trial and (2) raise the issue again in a posttrial motion. [Citation.] This
> requirement 'encourages a defendant to raise issues before the trial court, thereby
> allowing the [trial] court to correct its [own] errors' and 'consequently precluding
> a defendant from obtaining a reversal through inaction.' [Citation.]" *People v.
> Townsend*, 2022 IL App (1st) 200911, ¶ 70 (quoting *People v. Piatkowski*, 225 Ill.
> 2d 551, 564 (2007)). See also Ill. S. Ct. R. 366(b) (eff. Feb. 1, 1994); 615(a).

The failure to satisfy both requirements—both raising the issue at trial and specifying the error in a posttrial motion—results in forfeiture of appellate review of the issue. *People v. Himber*, 2020 IL App (1st) 162182, ¶ 42 (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)).

¶ 24 Moreover, the issue must be raised with specificity; a general objection to an evidentiary ruling will not suffice. See *id.* (citing *People v. Johnson*, 385 Ill. App. 3d 585, 595-96 (2008)). See also *People v. Brand*, 2021 IL 125945, ¶ 32 (citing Ill. R. Evid. 103(a)(1) (eff. Oct. 15, 2015)). Illinois Rule of Evidence 103 requires an objection to a ruling admitting evidence to state the specific ground of the objection. Ill. R. Evid. 103(a)(1). And in *Brand*, our supreme court reminded us that, as in this case, the rule requiring an objection both at trial and again in a posttrial motion:

> "is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level."
> *Brand*, 2021 IL 125945, ¶ 32.

¶ 25 As demonstrated above, defendant failed to properly preserve these issues for review. *Supra*, ¶¶ 23-25. Defendant initially failed to argue to this court why it should not honor the forfeiture. For the first time in his reply brief, defendant argues (1) the State forfeited its forfeiture argument by failing to object to defendant raising the issues orally, and (2) even if he failed to preserve the alleged errors for review, this court may review the issues under the plain error rule. It is true that plain error may be raised for the first time in a reply brief. *People v. Hardy*, 2020 IL App (1st) 172485, ¶ 77. "[U]nder a plain-error analysis, the error will only be considered where the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant *or* the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process." *People v. Davila*, 2022 IL App (1st) 190882, ¶ 49.

¶ 26 Defendant first argues the State forfeited its argument defendant forfeited review of the issues because the State did not object when defendant (1) raised the issue of the lack of foundation orally posttrial, (2) stated posttrial that the trial court erred when it admitted the statement as an excited utterance "or dying declaration," and (3) the trial judge's ruling on the pretrial motion indicates the trial judge considered [defendant's] trial counsel's objection as a challenge to the admission of the statements as both dying declarations and excited utterances. Defendant also argues this court may review the issues under the first prong of the plain error rule because the evidence in this case is closely balanced.

¶ 27 We have no need to address either of these arguments because we find no error occurred in the admission of evidence in this case; therefore, the State's alleged forfeiture of its arguments that defendant forfeited his arguments on appeal is immaterial as is defendant's plain error argument. "The first step in a plain error review generally is to determine whether any error occurred, which is defendant's burden to establish. [Citation.] Accordingly, to establish plain error, a defendant must first show that a clear or obvious error occurred." *Rios*, 2022 IL App (1st) 171509, ¶ 92. We find the trial court did not abuse its discretion in admitting the 9-1-1 recording and, therefore, defendant cannot satisfy their burden to establish that a clear or obvious error occurred.

¶ 28 The 9-1-1 caller said that Joseph had shot him and described what Joseph was wearing at the time. Defendant argues the State failed to establish the identity of the caller. The 9-1-1 operator asked the caller if they were Hollins to which the caller responded affirmatively but defendant argues this is not sufficient and the State failed to adduce other corroborative evidence of the caller's identity. Defendant argues the 9-1-1 dispatcher did not, and could not, identify Hollins as the caller, the State failed to ask the 9-1-1 dispatcher if she had the telephone number

that called 9-1-1 and if that number matched the number on a caller identification display, and there were no corroborative circumstances to identify the caller. As to the circumstances of the call, defendant notes the 9-1-1 dispatcher testified the call was made approximately 15 minutes after the first police officer testified they arrived on the scene and any bystander could have known about the shooting including the number of victims and where Hollins had been hit.

¶ 29    First, we find the evidence provided a proper foundation for the admission of the statement as being made by Hollins. According to our supreme court:

> "Telephone conversations that are relevant to the issues at trial are competent if a proper foundation is laid. A mere assertion by the other person as to his or her identity, being hearsay, cannot be taken as a sufficient showing of the other person's identity. [Citations.] Testimony as to a telephone conversation between a witness and another person is inadmissible in the absence of a claim by the witness that he or she knows the other person or can identify the person's voice *or other corroborative circumstances from which the caller can be identified as the person who talked to the witness*. [Citations.]" (Emphasis added.) *People v. Caffey*, 205 Ill. 2d 52, 94-95 (2001).

¶ 30    In *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 23, this court explained that "a recording of a telephone conversation is admissible when *** the speaker can be identified *** through other corroborative circumstances. [Citation.] In other words, the trial court need only determine the identity of the person(s) on the recording and may do so through *** other corroborative circumstances." *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 23 (citing *Caffey*, 205 Ill. 2d at 94-95). The "other corroborative circumstances" include the content of the call itself; and "where the content of the call[ is] matched with other corroborative

circumstances, these circumstances provide[] a sufficient foundation to admit testimony regarding the content of the telephone conversations." *Id.*

¶ 31    In this case, the content of the 9-1-1 call matches with other corroborative circumstances. The caller identified themself has Hollins and stated they had just been shot in the stomach at a particular location and that they were bleeding. The caller identified defendant as the person who shot them. Independent of the content of the phone call, at about the same time and place the caller identified, police heard gunshots and found shooting victims at the location. One of the people shot at that location at that time was, in fact, Hollins. Hollins was, in fact, shot in the stomach, and Hollins was bleeding. Also independent of the phone call, other evidence—namely multiple eyewitness identifications—identified defendant as the person who shot Hollins. In *Camacho*, the court found sufficient corroborating circumstances to identify the caller where "[t]he information the caller supplied with regard to defendant's name *** and what he was wearing matched perfectly with the officers' observations at the scene" and the injuries the caller described matched what was actually found. *Camacho*, 2018 IL App (2d) 160350, ¶ 27. We find similar circumstances to exist in this case.

¶ 32    Defendant's attempt to distinguish *Camacho* on the ground any bystander could have provided the same information as the caller falls short. The caller not only provided the information but also identified themself and defendant. Compare *Camacho*, 2018 IL App (2d) 160350, ¶ 27 ("the caller gave her name as well as defendant's name"). The question is not whether the caller is the only person who could provide the corroboration but whether "the content of the call was corroborated by other circumstances identifying [the] caller." *Id.* (citing *Caffey*, 205 Ill. 2d at 95-96; *People v. Edwards*, 144 Ill. 2d at 168). In *Camacho*, the court examined whether the caller's self-identification and details of the offense were corroborated by

other evidence outside the content of the call. See *id*. Here, as in *Camacho*, such corroboration existed. The *Camacho* court found the trial court did not abuse its discretion in admitting the recording into evidence. *Camacho*, 2018 IL App (2d) 160350, ¶ 27. We reach the same result. The trial court did not abuse its discretion in this case.

¶ 33    Second, we find the statements in the 9-1-1 recording are admissible as an exited utterance. Because we find the statement admissible as an excited utterance, we have no need to address defendant's arguments the statement was not a dying declaration. See *People v. Coleman*, 116 Ill. App. 3d 28, 34 (1983) (discussing substantive merit of State's argument evidence should have been admitted on alternative grounds); *People v. Mujkovic*, 2022 IL App (1st) 200717, ¶ 22 ("Because the trial court clearly used the other-acts evidence to rebut the claim of self-defense, we see no reason to consider other potentially proper but hypothetical uses of this evidence.").

> "Illinois Rule of Evidence 803(2) (eff. Sept. 28, 2018) provides that an excited utterance is not excluded by the rule against hearsay. An 'excited utterance' is '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' [Citation.] '[F]or this exception to apply, there must be (1) an event sufficiently startling to produce a spontaneous and unreflecting statement, (2) an absence of time to fabricate, and (3) a relation between the statement and the circumstances of the event.' [Citation.]" *People v. Sapp*, 2022 IL App (1st) 200436, ¶ 52.

¶ 34    In making these determinations courts consider several factors, "including the passage of time, the declarant's mental and physical condition, the nature of the event, and whether the statement is in the declarant's self-interest. [Citation.]" *People v. Morales*, 2021 IL App (2d)

190408, ¶ 12. Specific factors the court has considered include, but are not limited to, to whom the declarant spoke before making the allegedly excited utterance and whether the declarant's intent in the communication was to seek help and medical assistance. See *id*. ¶¶ 16-17. The statement at issue in this case was in response to a question by the 9-1-1 dispatcher. That a statement was made in response to a question does not necessarily destroy spontaneity. *Morales*, 2021 IL App (2d) 190408, ¶ 14. "The critical inquiry is whether the statement was made while the excitement of the event predominated. [Citations.]" *Id*. We review the trial court's determination regarding the excited utterance exception for an abuse of discretion. [Citation.] An abuse of discretion occurs only where the court's ruling is arbitrary, fanciful, or unreasonable." *Sapp*, 2022 IL App (1st) 200436, ¶ 52.

¶ 35    In this case the trial court did not abuse its discretion in finding that the statement on the 9-1-1 call qualified as an excited utterance. There is no dispute the shooting was a sufficiently startling event or that the statement related to the circumstances of the event. *Sapp*, 2022 IL App (1st) 200436, ¶ 52. Defendant argues the State failed to present sufficient evidence to show that the 9-1-1 caller's statement was made while the excitement of the shooting predominated their mind. Defendant argues the circumstances of the statement to the 9-1-1 dispatcher indicate the caller did not make the statement while the excitement of the shooting predominated as evidenced by the passage of time, the fact the caller sounded calm, coherent, and rational when providing the name and description of the shooter, and that the paramedic who treated Hollins did not testify that Hollins appeared excited or agitated. Furthermore, the circumstances fail to show that the 9-1-1 caller would have volunteered the information about the shooter had the 9-1-1 dispatcher not asked who shot the caller.

¶ 36　We are not persuaded to find that the trial court's judgment that the statement qualifies as an excited utterance is "arbitrary, fanciful, or unreasonable." *Sapp*, 2022 IL App (1st) 200436, ¶ 52. The passage of, at most, 18 minutes between the shooting and the statement does not make it unreasonable to find that the "excitement" of being shot still predominated the declarant's mind after less than 20 minutes during which they remained conscious and feeling the effects of the shooting. Nor are we persuaded to find an abuse of discretion based on Hollins's allegedly calm, coherent, and rational demeanor. Regardless how the declarant "sounded" the facts were that the passage of time between the event and the statement was relatively short, the declarant's physical condition was that he was shot doing nothing more than standing on the street, the declarant had no self-interest that has been proven in naming defendant as his assailant (defendant's revenge motive remaining highly speculative), and the purpose of the conversation was to obtain help and medical assistance. See *Morales*, 2021 IL App (2d) 190408, ¶¶ 12, 16-17.

¶ 37　We find Hollins called 9-1-1 "while the startling nature of the event predominated." *Id*. ¶ 18. Additionally, the 9-1-1 dispatcher was the first person Hollins spoke with identifying the shooter (defendant only arguing he came into contact with Derrick Edwards (the victim's brother) and a police officer but did not identify the shooter to them). Compare *People v. Robinson*, 73 Ill. 2d 192, 199 (1978) (challenged statements came after the declarant had discussed the crime with her sister and brother-in-law including identifying information about the assailant). In addition, the call was made to seek assistance. See *Morales*, 2021 IL App (2d) 190408, ¶¶ 16-17. The trial court did not abuse its discretion in admitting Hollins's statement to the 9-1-1 dispatcher. *Id*. Because the trial court properly admitted the statement under the excited utterance exception to the rule against hearsay (Ill. R. Evid. 803(2)), no error occurred in this

case and there can be no plain error (*Rios*, 2022 IL App (1st) 171509, ¶ 92). The trial court's judgment admitting the statement in the recording of the 9-1-1 call is affirmed.

¶ 38    Next, defendant argues he was denied a fair trial because the trial judge failed to properly admonish the potential jurors pursuant to Illinois Supreme Court Rule 431(b). Whether an error occurred in a case involving an alleged Rule 431(b) violation is a matter this court reviews *de novo*. *People v. Birge*, 2021 IL 125644, ¶ 24. Specifically, the trial judge allegedly failed to ensure the potential jurors *understood* the principles stated in the rule and instead only asked whether the potential jurors "accepted" those principles of law. Defendant argues this failure alone constitutes plain error requiring reversal of their conviction despite defendant's failure to preserve the alleged error for review.

¶ 39    Defendant asserts the alleged error is reviewable under the first prong of the plain-error rule because the evidence is closely balanced. On appeal the State assumes, *arguendo*, the trial court erred in admonishing the potential jurors but argues that plain error review is not warranted in this case because the evidence is not closely balanced. We agree with the State. The defendant bears the burden to establish that an error occurred and either that the evidence is closely balanced or the error was sufficiently serious to deprive the defendant of a fair trial. *Rios*, 2022 IL App (1st) 171509, ¶ 92. "In determining if the evidence was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of the evidence within the context of the case." *Id*. ¶ 93. "[W]e perform a commonsense and qualitative, rather than strictly quantitative, assessment of the entirety of the trial evidence in context against the elements of the charged offense." *People v. Moon*, 2020 IL App (1st) 170675, ¶ 50 (reversed on other grounds, *People v. Moon*, 2022 IL 125959). The evidence in this case

was not closely balanced; therefore, defendant has failed to satisfy his burden under the plain error rule.

¶ 40    In this case, defendant argues the evidence is closely balanced because "the outcome of this case ultimately came down to whether the jury believed the State's witnesses or Mathis' alibi." Defendant argues both sides presented evidence to support their theory of the case, both sides' evidence was impeached with evidence to contradict that theory, and both sides' evidence was plausible. Defendant notes no physical evidence linked him to the crime and he did not make any inculpatory statements. Defendant has adequately defined the choice the jury had to make but the fact the jury had to chose between competing theories of the case supported by evidence that was attacked by the opposing side only means there was a trial on the merits of the case—because that is what happens in every trial—but it does not establish that the evidence was closely balanced.

¶ 41    Defendant is correct that the outcome of the case turned on the jurors' assessment of the witnesses' credibility. It is also true that for purposes of plain-error review "[e]vidence may be closely balanced when a case turns on a credibility determination between conflicting testimony." *People v. Scott*, 2020 IL App (1st) 180200, ¶ 51. However, "there is no credibility contest where, as here, one party's account is 'unrefuted, implausible, or corroborated by other evidence.' [Citation.]" *Id*. "Where a case does not involve competing witnesses and the jurors are not asked to determine 'relative credibility,' the factfinder's responsibility to assess witness credibility does not automatically make the evidence closely balanced. [Citation.]" *Id.* This court has long held that even a single eyewitness identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. *In re N.A.*, 2018 IL App (1st) 181332, ¶ 22. Those circumstances include "(1) the

witness's opportunity to view the suspect during the commission of the offense; (2) the witness's degree of attention; (3) the accuracy of any prior descriptions provided; (4) the witness's level of certainty at the time of the identification procedure; and (5) the length of time between the crime and the identification." *Id.*

¶ 42    In this case, the State's evidence is corroborated by the various witnesses' testimony. Edwards's and Jackson's eyewitness identifications are consistent with each other as to the identity of the shooter and further corroborated by the statements by the 9-1-1 caller. Neither Edwards's inability or possibly just failure to identify certain details, his earlier failure to identify defendant, nor Jackson's possible inability to view everyone present on the street corner that morning, do not, in our view, detract from their ability to observe and identify the shooter or their multiple, positive, certain identifications of defendant. See *In re N.A.*, 2018 IL App (1st) 181332, ¶ 22 (factors used to determine opportunity to identify defendant include opportunity to view the suspect during the commission of the offense and witness's level of certainty at the time of the identification procedure). Defendant's evidence is from a single witness and lacks corroboration. Defendant's alibi was that he was with his aunt visiting their relative—her sister—after a family tragedy that occurred two days before the shooting but which the witness only learned about in the early morning hours of the day of the shooting. Defendant's witness testified several other people were present when she was allegedly with defendant at the time of the shooting but defendant called none of them to testify. This court has previously stated that "family relations between defendant and his alibi witnesses suggest the jury could reasonably have been skeptical of their testimony." *People v. Jones*, 222 Ill. App. 3d 206, 210 (1991).

¶ 43    Furthermore, this case does not involve "competing witnesses" requiring the trier of fact to determine "relative credibility." The "conflicting evidence" to which this rule refers is

evidence that conflicts each other as to some substantive matter and not simply the parties' competing theories of the case. For example, in *People v. Naylor*, 229 Ill. 2d 584, 606-07 (2008), on which *Scott* relied, our supreme court found the case was "indeed a contest of credibility" and that the evidence was closely balanced. *Naylor*, 229 Ill. 2d at 606-07. In that case, however, the defense and the State were both "relating their respective versions of the same underlying incident." *Id*. at 607. Our supreme court found that '[g]iven these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that of defendant." *Id*. at 607. Our supreme court noted that at the close of the testimony in *Naylor*, the tier of fact "was faced with two different versions of events, both of which were credible." *Id*. at 608. In this case, the opposing sides are not presenting various versions of the same event; therefore, this case does not involve the type of "relative credibility" the *Naylor* court contemplated. Rather, to decide the case, the trier of fact simply had to exercise its responsibility to assess witness credibility, which "does not automatically make the evidence closely balanced." *Scott*, 2020 IL App (1st) 180200, ¶ 51.

¶ 44    In this case the State adduced the testimony of two eyewitnesses to the crime, both of whom had a clear view of defendant before, during, and after the shooting. On the other hand, defendant presented an alibi by a relative who, by her own testimony, could not recall many details about that day. Based on a qualitative, not quantitative, commonsense assessment of the evidence, we do not agree that the evidence in this case was closely balanced for purposes of plain-error review. We find defendant has failed to satisfy his burden to establish that the evidence was closely balanced; therefore, we decline the request to review defendant's

unpreserved errors under the plain error rule. Accordingly, the trial court's judgment convicting defendant is affirmed.

¶ 45                                    CONCLUSION

¶ 46     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 47     Affirmed.