NOTICE

Decision filed 02/09/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200067-U

NO. 5-20-0067

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 18-CF-1219 |
| | ) | |
| BARNESHIO WHITE, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt; defendant's completion of his sentence moots any sentencing issue; none of defendant's allegations of ineffective counsel required further action by the trial court; and the court did not abuse its discretion in evidentiary rulings. As any argument to the contrary would clearly lack merit, we grant OSAD leave to withdraw as counsel and affirm the trial court's judgment.

¶ 2   Following a jury trial, defendant, Barneshio White, was convicted of aggravated unlawful restraint. The trial court sentenced him to 3½ years' imprisonment. Defendant appeals.

¶ 3   Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing this appeal presents no arguably meritorious issues. See *Anders v. California*, 386 U.S. 738 (1967). OSAD notified defendant of its motion, and this court provided defendant with ample opportunity to file a response. He has not done so. After reviewing

1

the record and considering OSAD's motion and supporting memorandum, we agree that this appeal presents no issue of arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 4                                    BACKGROUND

¶ 5        Defendant was charged with aggravated kidnapping while armed with a firearm (720 ILCS 5/10-2(a)(6) (West 2018)) and aggravated unlawful restraint while armed with a firearm (*id.* § 10-3.1(a)).

¶ 6        Prior to trial, defendant moved to suppress statements he made to Belleville police. He alleged that he invoked his right to counsel by asking the interviewing officer whether he needed a lawyer. The court denied the motion, finding defendant's question was not an unequivocal request for counsel. In any event, defendant's statement, which was largely exculpatory, was not admitted at trial except for an 18-second clip admitted for impeachment.

¶ 7        Despite being represented by the public defender's office throughout the proceedings, defendant filed various *pro se* documents. On November 15, 2018, defendant wrote to the circuit clerk requesting a speedy trial. Defendant filed *pro se* motions on February 12, 2019, February 27, 2019, March 19, 2019, and April 26, 2019. In a June 4, 2019, letter, defendant stated that, while he had, on March 12, 2019, "agreed with [counsel] on having more time to better prepare for my case," he nevertheless "never agreed to a tolling of my time."

¶ 8        In court on March 12, 2019, defense counsel explained that a trial date was set for May 20, 2019, but defendant would like an earlier trial date. Counsel explained, however, that due to other commitments, he would not be ready to start a trial before then. The court asked defendant whether he wanted his lawyer to be prepared. Defendant said that he did. He also affirmed that he did not want to represent himself.

2

¶ 9    On May 17, 2019, a different public defender appeared for defendant. He explained that he had just been assigned to defendant's case and needed additional time to "get up to speed." The court told defendant that he was facing a potential 45-year sentence and that the best way to ensure a fair trial was to grant a continuance.

¶ 10    On August 1, 2019, the court found defendant's *pro se* filings were nullities because he was represented by counsel. After reviewing the history of the case, the court found that 54 days of the 120-day speedy trial period were not attributable to the defense. Defense counsel said that he was adopting defendant's speedy-trial demand, leaving 66 days within which to bring defendant to trial. The court set an August 19, 2019, trial date. Following one more continuance requested by the State, trial commenced on September 9, 2019.

¶ 11    Briefly summarized, the evidence at trial revealed that on August 1, 2018, Tamija Walton was living temporarily with Lakeela Dent, Dent's boyfriend, Antonio Wright, and their two children. Wright is defendant's half-brother.

¶ 12    That afternoon, Walton's boyfriend, Lester Smith, appeared nervous. He said that Wright had accused him of taking a gun. Smith left the apartment and did not answer her calls or texts thereafter.

¶ 13    Shortly before midnight, Walton heard a knock at the door. Looking through the peephole, she saw a man she did not recognize, so she did not answer the door and went to the bathroom. When she came out, she saw the same man standing in the living room. She identified that man as defendant.

¶ 14    Defendant pointed a gun at her, demanding to know where Smith and his gun were. Walton tried to call Smith. She called her mother and several others trying to locate him. Walton told defendant that she could direct him to Smith's aunt's house, which coincidentally was near her

3

mother's house in Cahokia. She put on a jacket, and defendant told her to put a blue bandana over her face. When she did so, he pulled it tightly around her eyes. Defendant grabbed her by the collar, put the gun to her back, and marched her out the door to his car. Walton specifically testified that she did not agree to go with defendant, did not want to go, and did not know where they were going.

¶ 15 They got in the car and, after dropping his brother off at work at the St. Louis airport, drove back to Cahokia. Walton was able to escape and ran to her mother's house.

¶ 16 Walton's mother, Candace Bell, confirmed that Walton called her in the early morning of August 2, hysterical and crying. She said that Smith had allegedly stolen a gun from some men who wanted their gun back and were holding Walton against her will. Bell went to Smith's aunt's house in an attempt to locate him, but when she did not find him, she called 911. Over an objection by defense counsel, the court allowed Bell's 911 call to be played for the jury.

¶ 17 Dent testified for the defense and stated that when defendant, Walton, and Wright left Dent's house, they left normally, and Walton was not forced to go. On cross-examination, she said she did not remember telling police that when the man with the gun decided they would leave, he grabbed Walton's arm and put a bandana over her face. Nor did she remember making several other statements that were inconsistent with her trial testimony. However, she admitted to lying to the police, merely telling them what she believed they wanted to hear.

¶ 18 Defendant testified that Walton volunteered to accompany him to Smith's aunt's house. He had to take his brother to work first, so Walton just went with them. Defendant said that after dropping his brother off at the airport, he stopped for gas. Walton then directed him to Smith's aunt's house and told him where to drop her off. In rebuttal, the State played Dent's recorded

4

statement as substantive evidence pursuant to Illinois Rule of Evidence 801(d)(1)(A)(2)(c) (eff. Oct. 15, 2015).

¶ 19 The jury found defendant not guilty of aggravated kidnapping but guilty of aggravated unlawful restraint. The trial court sentenced him to 3½ years' imprisonment with one year of mandatory supervised release (MSR).

¶ 20 After sentencing, defendant filed a motion in which he alleged that defense counsel was ineffective. The motion raised three principal points: (1) counsel ignored his speedy trial demands, (2) counsel did not show him any DVDs received in discovery prior to trial, and (3) his "mother had multiple pieces of evidence" favorable to the defense but counsel "ignored her and didn't attempt to admit" this evidence. Defendant "also had a witness that was not mentioned."

¶ 21 The court conducted a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), during which the court asked counsel whether he had any comment on the speedy-trial allegations "other than the number of hearings we had where it was determined by this court, repeatedly, that there was [*sic*] no speedy trial issues." Counsel responded in the negative.

¶ 22 As to the remaining allegations, counsel explained that he had discussed the substance of the videos with defendant but did not bring the actual disks because rules prohibited bringing evidence to the jail. Counsel further explained that, while defendant's mother had shown him some pictures, counsel did not believe they were relevant. Additionally, he made a strategic decision not to call some of the witnesses that were discussed during that conversation. The court found none of the allegations sufficient to warrant a further hearing or the appointment of new counsel. Defendant timely appealed.

¶ 23                                    ANALYSIS

¶ 24 OSAD suggests four possible issues but concludes none have arguable merit. We agree.

5

¶ 25    First, OSAD concludes there is no meritorious argument that the trial court's evidentiary rulings constituted reversible error. OSAD notes that the court made three significant rulings in that regard: (1) denying defendant's motion to suppress his recorded statement to police, (2) admitting Bell's 911 call, and (3) admitting Dent's prior statement. We discuss each in turn.

¶ 26    The admission of evidence is within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *People v. McNeal*, 2019 IL App (1st) 180015, ¶ 28. As to the first issue, the trial court correctly ruled that defendant did not unambiguously invoke his right to counsel.

¶ 27    A defendant may not be questioned by police after invoking his right to counsel and any statements made after so doing will be inadmissible in the State's case-in-chief. See *People v. Winsett*, 153 Ill. 2d 335, 349 (1992) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). However, the invocation must be clear and unequivocal. *People v. Firestine*, 2019 IL App (5th) 180264, ¶ 14. Ambiguous references to counsel such as "Do I need a lawyer?" are insufficient. *In re Christopher K.*, 217 Ill. 2d 348, 383 (2005). The trial court therefore correctly found that defendant's nearly identical question did not clearly invoke his right to counsel.

¶ 28    Regarding Bell's 911 call, an exception to the hearsay rule exists where a statement relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Apr. 26, 2012). It is reasonably inferred that Candace Bell made her 911 call in the immediate wake of having spoken to Walton on the phone and learning that she was being held at gunpoint. Thus, Bell's statements on the call were admissible as excited utterances. See *People v. Morales*, 2021 IL App (2d) 190408, ¶ 18 (911 call made "while the startling nature of the event predominated" was admissible as excited utterance). In any event, the content of the call

6

was essentially cumulative of Walton's and Bell's trial testimony, making any error in its admission harmless. See *People v. Jackson*, 2020 IL 124112, ¶ 127 (harmless error is established when the result of the proceedings would have been the same absent the error).

¶ 29    The final evidentiary issue involves the admission of Dent's statement to the police as substantive evidence. The Illinois Rules of Evidence provide:

"(d) *** A statement is not hearsay if

(1) *** In a criminal case, the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

(A) inconsistent with the declarant's testimony at the trial or hearing, and—

***

(2) narrates, describes, or explains an event or condition of which the declarant had personal knowledge, and

* * *

(c) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording[.]" Ill. R. Evid. 801(d)(1)(A)(2)(c) (eff. Oct. 15, 2015).

¶ 30    Here, the rule's requirements were met. The prior statement was clearly inconsistent with her trial testimony, Dent acknowledged being present for the events, and the parties stipulated that the statement was recorded accurately. Thus, the court properly admitted the statement as substantive evidence.

¶ 31    OSAD next concludes there is no arguable merit to a contention that the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt. When a defendant challenges

7

the sufficiency of the evidence on appeal, we will reverse the conviction only if, after viewing the evidence in the light most favorable to the State, no " 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The trier of fact is responsible for determining witness credibility. *People v. Evans*, 209 Ill. 2d 194, 211 (2004).

¶ 32    Defendant was convicted of aggravated unlawful restraint, which required the State to prove that defendant knowingly and without legal authority detained Walton while armed with a dangerous weapon. See 720 ILCS 5/10-3.1(a), 10-3(a) (West 2018). Here, Walton unequivocally testified that defendant forced her out of the house and into his car at gunpoint with a bandana tied around her face. This testimony was largely corroborated by Bell and by Dent's statement to the police, which was admitted as substantive evidence. This evidence was sufficient to prove defendant guilty of aggravated unlawful restraint.

¶ 33    Of course, defendant and Dent testified differently. Dent's testimony was largely impeached by her prior statement but, in any event, the jury was certainly free to accept Walton's and Bell's testimony over that of defendant and Dent.

¶ 34    OSAD next concludes it can make no potentially meritorious argument that defendant's sentence was an abuse of discretion given that defendant completed his sentence. A sentencing issue is moot when a defendant has served his sentence, including MSR, as the reviewing court cannot grant effectual relief. *People v. Funches*, 2019 IL App (3d) 160644, ¶ 8. Here, defendant was arrested in August 2018 and remained incarcerated until sentencing. He was eligible for release after 21 months, followed by 1 year of MSR. Thus, his MSR term was completed sometime

in 2020. Indeed, the Department of Corrections website confirms defendant is not currently incarcerated or on MSR. See *People v. Young*, 355 Ill. App. 3d 317, 321 n.1 (2005) ("[W]e may take judicial notice of information that the Department of Corrections has provided on its website."). Thus, any challenge to his sentence would be moot.

¶ 35 Finally, OSAD concludes no meritorious issue exists regarding the *Krankel* hearing. New counsel is not required each time a defendant claims that counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Rather, when a defendant raises such a claim, the court should first examine the claim's factual basis. *Id.* at 77-78. If the court finds the claim lacks merit or pertains only to matters of trial strategy, the court need not appoint new counsel. *Id.* at 78. However, if the allegations show possible neglect of the case, the court should appoint new counsel. *Id.*

¶ 36 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defendant. *People v. Cherry*, 2016 IL 118728, ¶ 24 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Defendant raised three ineffective-assistance claims. The first was that his attorneys were ineffective for not respecting his insistence on having a speedy trial. Defendant contended his attorneys undermined his speedy-trial rights when they continually sought or agreed to continuances despite his insistence on a speedy trial.

¶ 37 A defendant in custody must be brought to trial within 120 days. *People v. Smith*, 2016 IL App (3d) 140235, ¶ 17 (citing 725 ILCS 5/103-5(a) (West 2012)). A defendant has the burden of proving his right to a speedy trial was violated and that he caused no delay. *Id.* ¶ 19. A defendant occasions a delay "when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to the delay." (Internal quotation marks omitted.) *Id.*

9

¶ 38     Moreover, "a defendant is bound by the actions of his attorney, unless the defendant clearly and convincingly asserts his right to discharge his attorney." *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003). Generally, the decision to demand a speedy trial or to seek dismissal of the charges on such grounds are strategic decisions for counsel. *Id.* at 298.

¶ 39     When specifically questioned by the trial court, defendant affirmed his preference of having his lawyer prepared for trial and that he did not wish to represent himself. A " '[d]efendant cannot contend that it was unfair to force him to choose between a speedy trial and effective assistance of counsel. Defendant may have a right, even of constitutional dimensions, to pursue whichever course he chooses, but the Constitution does not forbid requiring him to choose nonetheless.' " *Id.* (quoting *People v. Bowman*, 138 Ill. 2d 131, 148 (1990)).

¶ 40     Though defendant was represented by multiple attorneys, each attorney acquiesced to pretrial continuances and none demanded trial until August 1, 2019. Thus, the trial court properly found those delays attributable to defense counsel were properly charged to defendant and that, excluding those delays, defendant was brought to trial well within the 120-day period.

¶ 41     Defendant's second allegation of ineffective assistance claims that counsel did not show him the DVDs that were apparently turned over in discovery. Counsel asserted that he discussed the substance of the videos with defendant but was unable to show them due to jail rules.

¶ 42     Even assuming, *arguendo*, that defendant had a right to personally view the videos, he cannot establish that he was prejudiced under *Strickland*.  In other words, defendant cannot show that the result of the trial would have been different had he personally viewed the videos rather than merely discussing their substance with defense counsel. See *People v. Griffin*, 178 Ill. 2d 65, 74 (1997) ("[I]f the ineffective-assistance claim can be disposed of on the ground that the

10

defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient.").

¶ 43    Defendant's final contention claimed that defense counsel failed to make use of allegedly exculpatory evidence in the possession of defendant's mother or to call witnesses whose names defendant provided. When questioned about this, counsel explained that defendant's mother's evidence was not relevant and he made a strategic decision not to call the witnesses.

¶ 44    Generally, decisions about whether to call certain witnesses or present certain evidence are questions of trial strategy reserved to counsel's discretion. *People v. Enis*, 194 Ill. 2d 361, 378 (2000). "Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence [citation], and are, therefore, generally immune from claims of ineffective assistance of counsel [citation]." *Id.* An exception exists, however, "where counsel's strategy was so unsound that no meaningful adversarial testing was conducted." *Id.*

¶ 45    Here, as OSAD notes, counsel's strategy was effective in that the jury acquitted defendant of the more serious aggravated-kidnapping charge, which carried a sentence of up to 45 years in prison. Thus, there can be no contention that counsel failed to subject the State's case to meaningful adversarial testing. Moreover, at the *Krankel* hearing, defendant could not specify the evidence or name the witnesses that counsel failed to present, much less explain how that failure affected the trial's outcome. Therefore, there is no basis to conclude counsel's strategic decisions were unsound.

¶ 46    Defendant's ineffective assistance of trial counsel claims are either rebutted by the record or fail to show prejudice. Accordingly, the court did not err in failing to appoint new counsel or by denying defendant's claims.

11

¶ 47                              CONCLUSION

¶ 48    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 49    Motion granted; judgment affirmed.